## YANK, Appellant, *v.* BORDEAUX, Respondent.

[No. 1,136.]

[Submitted July 11, 1899.　Decided July 24, 1899.]

*Fraudulent Conveyances— Change of Possession— Contracts— Construction—Mining Lease—Rights of Lessee.*

1. Where a joint owner of personalty which is in the possession of another joint owner sells his interest, the purchaser's failure to take possession does not, as against execution creditors of the seller, avoid the sale, under Civil Code, Section 4491, providing that every transfer of personal property by a person in possession or control of the property shall be conclusively presumed to be fraudulent, and therefore void, if not accompanied by an immediate delivery, and followed by actual and continued change of possession. Such presumption is to be indulged only where the person making the transfer has at the time the possession or control of the property.
2. Where one of several joint owners of personalty sells his interest, the purchaser need not notify the other co-owners of the sale, in order to make it valid as against execution creditors of the seller.
3. After plaintiff had purchased personalty in possession of third persons, it was seized by an officer under execution against the seller. In an action against the officer for the proceeds of its sale, *held*, that plaintiff's failure to notify defendant and the seller's creditors of the sale, prior to the levy, did not preclude his right to recover.
*Obiter:* The general rule is that an attaching or execution creditor succeeds to and acquires only the rights of his debtor, while a purchaser for value and without notice may acquire greater rights and a higher title than his vendor possessed.
4. The lessees of a mine agreed with plaintiff's assignor to operate the mine, in consideration of plaintiff's assignor furnishing all necessary supplies, the net proceeds of the ore, after milling, to be equally divided between the lessees and plaintiff's assignor. *Held*, that in determining the net proceeds only the cost of smelting, and not the costs of mining, hoisting and handling the ore, should be deducted from the gross proceeds.
5. Where plaintiff purchased ore of one who obtained it of the lessees of a mine, his title was not affected by a forfeiture of the lease after the ore had been mined, in the absence of evidence that such forfeiture carried with it the right to ore previously mined.

*Appeal from District Court, Silver Bow County; John Lindsay, Judge.*

Action by John Yank against T. J. Bordeaux, constable. From a judgment for defendant, and an order overruling plaintiff's motion for new trial, plaintiff appeals. Reversed.

*Messrs. Howell & Harney,* for Appellant.

*Mr. John W. Cotter,* for Respondent.

The transfer of personal property, not accompanied by an immediate delivery and an actual and continued change of possession, is conclusively presumed to be fraudulent and therefore void as against the creditors of the vendor. (Civil Code, Sec. 4491; *O' Gary* v. *Lowry*, 5 Mont. 427, 431–32; *Bunting* v. *Saltz*, 84 Cal. 168.) The mere fact that the appellant's grantors had an undivided interest in the property would not relieve appellant from the necessity of taking possession of the property and complying with the provisions of Section 4491 of the Civil Code. Where one of two partners sells to a third person his interest in a stock of goods belonging to the partnership, there must be an immediate delivery and continued change of possession as required in the said section, or the sale will be void as to creditors. (*Newell* v. *Desmond*, 63 Cal. 242.) Section 4491 of the Civil Code applies to a sale of an undivided interest by a joint tenant of a chattel in actual possession. (*Brown* v. *Niel, Sheriff*, 95 Cal. 262, 30 Pac. 538.) If the property is so situated that the purchaser can take possession of it at pleasure, his failure to do so renders the previous transfer void as to the creditors of the vendor. (*Pierce* v. *Boggs*, 99 Cal. 340, 33 Pac. 906.) If a debtor in anticipation of a judgment or claim against him fraudulently conveys his property to another, who is privy to the fraud, with intent to hinder or delay his creditors who thereafter obtain judgments and levy executions on the property in the hands of the fraudulent grantee, such grantee cannot recover the property from such judgment creditor or from the officer levying upon the same. (*Greer* v. *Wright*, 52 Amer. Dec. 111, Notes 113, 114–19; *Marshall* v. *Buchanan*, 35 Cal. 264.)

MR. JUSTICE PIGOTT delivered the opinion of the Court.

The plaintiff, claiming to own an undivided one-half interest, amounting to $434.38, in certain ores treated at the Parrot smelter, brought this action for damages against the defendant, who, as constable, had levied upon and seized such interest on executions against the property of Pohndorf, Pear-

son and Thompson, in favor of their judgment creditors, and who, upon demand, refused to release the levy, or to pay the said amount to the plaintiff. The issues were tried by jury, and a general verdict for the defendant was returned. The plaintiff appeals from an order overruling his motion for a new trial and from the judgment.

For the purposes of the case, the facts to be considered in deciding the questions necessarily involved may be summarized as follows: On the 11th day of March, 1896, one Hughes and seven men associated with him, became the lessees for the term of 90 days of the West Elbe lode mining claim. On the same day a written contract was entered into between Hughes and his associates as parties of the first part, and Pohndorf, Pearson and Thompson, as parties of the second part, in which the parties of the first part described themselves as being lessees of the West Elba lode mining claim, and whereby it was agreed, among other things, that the parties of the first part should furnish the labor of eight men each day, and operate the mine, and the parties of the second part should provide all supplies and materials necessary to carry on the work; the net proceeds of the ore, after milling or reduction, to be divided equally, the parties of the first part to have one half and the parties of the second part the other half. From the 12th day of March to the 1st day of May, 1896, the parties of the first part were in actual possession of and working the mining claim, and whatever possession the parties of the second part had was merely constructive. On April 29, 1896, the parties of the second part, named in the contract, for a valuable consideration sold and assigned to the plaintiff all their right, title and interest in and to about 20 tons of silver and gold ore then contained in the ore house and bins of, and extracted from, the West Elba mine, as well as their right and share in and to the net proceeds of the same as soon as it should have been milled or worked, as their interest appeared by the contract mentioned. After the delivery of the bill of sale to the plaintiff, his agent, in company with Pohndorf, went to the mine, where they found Hughes, who was the

only one of the lessees on the surface. They notified him of the transfer, and read the bill of sale to him, requesting him to inform his associates that the transfer had been made, which Hughes promised to do. Hughes, Pohndorf and the plaintiff's agent then went to the ore house, and identified and examined the ore in the bins, but the plaintiff did not at any time take actual possession thereof. Even if the parties interested had desired to divide the ore, it was not susceptible of fair division, as it was of unequal grades, some portions of it going several hundred, and some only twenty, dollars to the ton. This ore was afterwards delivered by the lessees to the Parrot smelter, and while in the possession of the smelter, and between the 1st and 7th days of May, the defendant, as constable, levied upon one-half of the net proceeds of the ore as the property of Pohndorf, Pearson and Thompson, under executions against their property, issued upon judgments rendered in actions brought by three of the lessees to enforce claims in existence when the assignment to plaintiff was made. The proceeds of the ore, after deducting the charges for its treatment, amounted to $868.76, one-half of which the defendant, by virtue of the writs in his hands, collected from the Parrot company as belonging to Pohndorf and others. While the net proceeds claimed by the plaintiff were in the possession of the defendant, and before he had applied any thereof towards the satisfaction of the judgments, the plaintiff demanded the release of the money, and requested the defendant to pay it to him, which the defendant refused to do. In the view we take of the case, the other evidence need not be stated.

1. Section 4491 of the Civil Code declares that "every transfer of personal property * * * is conclusively presumed, if made by a person having at the time the possession or control of the property, and not accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things transferred, to be fraudulent, and therefore void, against those who are his creditors while he remains in possession." The theory of the court

and of the counsel for the defendant was that this section applied to the facts disclosed by the evidence, and the jury were accordingly instructed that, if the ore had been broken, and hoisted out of the mine, and was in the bins, at or before the time of the transfer by Pohndorf, Thompson, and Pearson to the plaintiff of their interest in the ore, and the plaintiff did not take and retain the actual and continued possession thereof thereafter, then the sale to the plaintiff was void, and the verdict must be for the defendant. The theory of the court was wrong, and the instruction erroneous. The conclusive presumption that a transfer of personal property, in the absence of an immediate delivery and actual and continued change of possession of the subject of the transfer, is fraudulent and void as to the creditors' of the person making the transfer, is to be indulged only where the person making the transfer has at the time the possession or control of the property. The presumption does not arise from want of immediate delivery unless the seller or assignor had at the time possession or control of the thing sold or assigned. Pohndorf, Thompson, and Pearson were the owners, in common with Hughes and his associates, of certain ore in bins situate upon the West Elba mining claim. They transferred their title and interest to the plaintiff. At the time of the transfer they were not in possession or control of the ore, but their co-owners were then lawfully in the actual possession and control of the common property, and so remained until it was sent to the smelter for milling and reduction. Under such circumstances, a sale by a tenant in common may not be avoided by creditors upon the ground that the chattel was not delivered to the purchaser, for, as Mr. Freeman expresses the rule of law in Section 167 of his work on Co-Tenancy and Partition: "If A. and B. together own personal property, of which A. is in actual possession, and B. sell his moiety to C., the possession of A. immediately becomes the possession of C. also. Therefore, being at once, by presumption and construction of law, put in possession as tenant in common with A., it is not necessary that C. should take actual possession with A. to

make his purchase good under the statute of frauds as against the creditors of B. If A., the co-tenant in possession, had sold his interest, then the sale should have been followed by an actual change of possession, because there was no co-tenant whose actual possession could have operated for the benefit of A.'s vendee." And in Section 153 of his treatise on Executions: "The sale by one of several joint owners also furnishes an exception to the rule that there must be a change of possession. If the co-tenant selling is in the sole possession, he ought to give possession to his vendee; but, if the other co-tenants are in possession, the vendor has no right to take it from them. He may, therefore, from necessity, make a valid sale without placing the property in the custody of his vendee." The distinction pointed out is recognized in California, from the statutes of which state Section 4491, *supra*, was adopted. (*Brown* v. *O'Neal*, 95 Cal. 262, 30 Pac. 538.) Additional reason for applying this rule to the case at bar lies in the fact that the several portions of the ore differed so greatly in value as to make a division impracticable without defeating the design of the owners, and working injustice to some of them. For practical purposes, the ore was indivisible. In *Brown* v. *Graham*, 24 Ill. 628, the court say: "Property indivisible in its character, owned by tenants in common, is incapable of a several possession by each tenant. It therefore follows that the possession of one of the defendants is a constructive possession of the others. And when one of the joint owners, not in the actual possession, sells his interest in the property, the purchaser succeeds to all of the rights of his vendor, as held by him, without an actual delivery of possession. He, by such a purchase, becomes a tenant in common, and the possession of his co-tenant is constructively his possession. It is, however, otherwise when the tenant in common, having the actual possession, makes a sale of his interest, as the possession must, in that case, to be valid as against creditors and purchasers, accompany, and remain with, the title."

Whether or not Hughes informed his mining partners of

the assignment made to the plaintiff is, as matter of law, immaterial. Our attention has not been drawn to any rule of law requiring notice to be given to co-owners in actual possession of the common property of a sale by co-owners whose possession is merely constructive. We do not think that the omission of notice avoids such sale as to creditors of the vendors, and hence we do not decide whether the notice given to Hughes served as a notice to his associates.

2. The jury were instructed that, if the plaintiff had not, prior to the levy, notified the defendant and the attaching creditors of the sale to the plaintiff of a half interest in the ore and its net proceeds, the verdict should be in favor of the defendant. This was prejudicial error. Whatever may be the correct rule as to the necessity, in some cases, of giving notice in order to complete a transfer, or to protect or make secure the title of a vendee or assignee, as against a subsequent good-faith purchaser or assignee of the same chattel or interest therein, or of the same chose in action,—a subject upon which the courts hold divergent views (see *Graham Paper Co.* v. *Pembroke* [Cal.] 56 Pac. 627),—it is not applicable to the facts of the case at bar. Subject to certain exceptions, none of which is presented in this case, the general rule is that an attaching or execution creditor succeeds to and acquires only the rights of his debtor (*Reynolds* v. *Fitzpatrick*, 23 Mont. 52, 57 Pac. 452; *Oppenheimer* v. *Bank*, 20 Mont. 192, 50 Pac. 419; *McAdow* v. *Black*, 4 Mont. 475, 1 Pac. 751), while a purchaser for value and without notice may acquire greater rights and a higher title than his vendor possessed (Pomeroy, Equity, Jur. Sec. 698). Had the defendant, prior to notice of the plaintiff's claim, paid over the money collected under the levy, the plaintiff would doubtless be without remedy against him. It is plain, however, that notice to the defendant of the sale while he held the funds under the writs was sufficient to save and protect the right of the plaintiff thereto.

3. That the sum of $434.38 was one-half of the net proceeds of the ore was not controverted on the trial. More-

over, the funds levied upon were net proceeds, within the meaning of the contract between Pohndorf and others and Hughes and others. Hughes and his associates were to furnish and pay for the labor, while Pohndorf, Thompson, and Pearson were bound at their own cost to furnish all things necessary to the proper working and operation of the mine; and the net proceeds of the ore after milling or reduction were to be equally divided. So the contract provides. It is therefore apparent, at least in the absence of evidence in respect of possible outlay incident to delivery at the smelter, that the expression ''net proceeds'' was employed and understood as signifying the avails of the ore, less charges of milling and reduction only. The instructions of the court to the effect that the burden was upon the plaintiff to show that there were net proceeds, and that the term meant net value of the ore after deducting all proper charges for mining, hoisting, handling, and smelting and reducing it, were misleading, confusing and erroneous.

4. Another instruction was to the effect that if, at the time the defendant levied upon the proceeds of the ore, ''James A. Murray, one of the owners of the said claim, had forfeited the said lease, and thereupon the said Carston, Wallin, and Olson commenced suits against the said Pohndorf, Thompson, and Pearson to recover the amounts due them, the lease had been canceled and forfeited, the said Pohndorf, Thompson, and Pearson had no right to the net proceeds of the said ore, and you should find a verdict in defendant's favor.'' With respect to this instruction, it is sufficient to say there was no evidence tending to show that the right of Pohndorf, Thompson, and Pearson to a share of the ore already mined, and its net proceeds, would be lost or impaired by the act of the owner of the claim in declaring or enforcing a forfeiture of the lease made to Hughes and his mining partners.

Under the instructions of the court the jury were in duty bound to find for the defendant, whereas we are constrained to believe that the evidence tended strongly and without contradiction to establish the plaintiff's right to recover. There

was not even a suggestion of, nor was an effort made to show, any fact or circumstance casting doubt upon the genuineness, the validity, or the *bona fides* of the assignment to the plaintiff.

The order refusing a new trial and the judgment are reversed, and the cause is remanded.

*Reversed and remanded.*