YANK, RESPONDENT, *v.* BORDEAUX, APPELLANT.

(No. 1,668.)

(Submitted October 12, 1903.   Decided November 4, 1903.)

*Constables — Levies — Sale of Property — Proceeds—Actions —Pleadings—Denials — Evidence—Introduction—Estoppel to Object.*

1. Where, in an action to recover money from a constable, the complaint alleged that defendant refused to pay plaintiff the money, and wrongfully retains and still holds the possession thereof, and the answer merely contained a denial "that defendant wrongfully retains or holds possession" of the sum, or any part thereof, such denial operated to deny the "wrongful" possession, only, and constituted an admission of possession.
2. Where, in an action against a constable to recover money received as the proceeds of the sale of property levied on, alleged to belong to plaintiff, defendant, in his answer, admitted possession of the money when the demand was made, evidence that at the time of such demand defendant had paid over the money on the executions was properly refused.
3. Language used by the supreme court in its opinion on a former appeal which was not necessary to the decision, and was mere dictum, is not the law of the case.
4. Where plaintiff claimed title to one-half of the proceeds of all the ore in certain bins, under a bill of sale purporting to convey one-half of the ore in the bins at the time the bill was executed, evidence that, after such execution, additional ore was placed in the bins, was admissible to defeat plaintiff's claim to one-half of the proceeds of all the ore in the bins.
5. Where plaintiff introduced evidence on a particular issue without objection, he should not be allowed thereafter to object to the introduction of evidence by the defendant on the same issue.

*Appeal from District Court, Silver Bow County; John Lindsay, Judge.*

ACTION by John Yank against Thomas Bordeaux, constable. From a judgment in favor of plaintiff, and from an order overruling a motion for a new trial, defendant appeals.   Reversed.

*Messrs. McHatton & Cotter,* for Appellants.

*Mr. E. B. Howell,* for Respondent.

MR. COMMISSIONER CLAYBERG prepared the opinion for the court.

There have been two trials of this case in the court below. The first resulted in a judgment and verdict for defendant, which was reversed by this court, and a new trial ordered. (*Yank* v. *Bordeaux,* 23 Mont. 207, 58 Pac. 42, 75 Am. St. Rep. 522.) The second trial resulted in a judgment and verdict for plaintiff, from which, and from an order overruling a motion for a new trial, this appeal is prosecuted.

The facts upon which this action is based are about as follows, viz.: Some ten men entered into a written contract under date of March 11, 1896, to work the West Elba mine under lease. Seven of the men were parties of the first part under this contract, and agreed to perform all labor necessarily required in the working of the mine. The other three, Phondorf, Pearson and Thompson, were parties of the second part under this contract, and agreed to furnish all supplies necessarily required for such working. The net proceeds were to be divided between the parties of the first and second part equally, each to receive one-half thereof. About the 29th day of April, 1896, the three parties of the second part transferred, by written bill of sale, their undivided one-half interest in and to about twenty tons of ore then in the orehouse and bins at the mine, or the proceeds thereof, if the ore should afterwards be shipped and treated. The ore was shipped to the Parrot Smelting Company, and treated by that company. The net proceeds of the shipment amounted to $868.76, of which plaintiff claimed to be the owner of one-half, or $434.38. After the ore had been treated, the defendant, as constable, levied upon that part of the proceeds claimed by the plaintiff, under writs directed against plaintiff's grantors, collected the money, and had the same in his possession when this suit was brought, as admitted in defendant's answer. The plaintiff then demanded of defendant the release of his portion of the proceeds of the ore from the levy, and the payment to him of $434.38, which was refused, and thereupon plaintiff instituted this suit. A complaint was filed containing allegations of which the following is a brief summary, viz.: (1) That defendant was a duly elected and qualified constable

in Silver Bow county. (2) That plaintiff was owner of one-half of the net proceeds of a certain shipment of ore "worked" by the Parrot Smelting Company, amounting to the sum of $434.38. (3) That the defendant wrongfully levied upon such proceeds under a certain execution. (4) That plaintiff made the demand upon defendant as above stated, which was refused by defendant, and that defendant "wrongfully retains and still holds possession of the said sum, to plaintiff's damage in the sum of $434.38." Then follows the prayer, in the following language: "Wherefore plaintiff demands judgment against the defendant in the sum of $434.38, and costs of this action." To this complaint the defendant filed an answer, which is briefly as follows: (1) Admits that he is constable. (2) Denies the allegations of ownership. (3) Denies that he wrongfully levied upon plaintiff's interest. (4) Admits the demand and refusal alleged. .(5) Denies that he "wrongfully retains or holds possession of said sum, or any part thereof, to plaintiff's damage."

No question concerning the sufficiency of these pleadings seems to have been raised by either party upon either trial or appeal, but both parties have always treated them as sufficient to raise all the issues in the case. Some very interesting and troublesome questions suggest themselves to us, as to the character and sufficiency of the complaint, viz.: (1) What is the character of this action—conversion, trespass, or assumpsit? (2) Are the allegations sufficient to maintain either action? (3) If in assumpsit, could a recovery be had in such action under the decision of this court in *Merchants' & Miners' Nat'l Bank* v. *Barnes,* 18 Mont. 335, 45 Pac. 218, 47 L. R. A. 737, 56 Am. St. Rep. 586? None of these questions seem ever to have been raised, or even suggested, and we will therefore not consider or decide any of them; but, inasmuch as the case must be reversed, we have thought proper to suggest them for the consideration of the respective attorneys. We also suggest the question as to whether the denials in the answer are sufficient to raise any issue save that of plaintiff's ownership.

We shall only consider two of the numerous errors assigned,

as all other errors argued were, if errors at all, without preju-
dice to the defendant.

1.   Defendant offered testimony for the purpose of showing
that, at the time plaintiff made demand on him for the funds
in controversy, he no longer had possession of the same, but had
paid the amount upon the execution in his hands, above referred
to. This the court refused to allow, and defendant assigns such
ruling as error. This ruling is correct. It will be noticed that
the allegation of the complaint is that the defendant refused
to pay plaintiff the money, "and wrongfully retains and still
holds possession of said sum," and that the denial in the answer
is as follows: "Denies, upon his information and belief, that
the defendant wrongfully retains or holds possession of said
sum, or any part thereof." This denial is only as to the wrong-
ful possession, and is no denial of actual possession. (*McCauley*
v. *Gilmer*, 2 Mont. 202; *Harris* v. *Shontz,* 1 Mont. 212;
*Toombs* v. *Hornbuckle,* 1 Mont. 286; *Proctor* v. *Irvin,* 22 Mont.
547, 57 Pac. 183.) It thus appears that by the answer of de-
fendant he admitted that he was in possession of the money in
question at the time the demand was made upon him. He can-
not be allowed to introduce proof in contradiction of this ad-
mission in his answer. True, this court, on the former hearing
of the case, used the following language, which is relied upon
by the defendant: "Had the defendant prior to notice of plain-
tiff's claim paid over the money collected under the levy the
plaintiff would doubtless be without remedy against him." This
language of the supreme court was not necessary to the decision
of the former appeal, is therefore mere *dictum,* and is not the
law of the case. No doubt, had the attention of the court been
called to the fact that defendant had admitted in his answer
that he was in possession of the money when demand was made,
the court would not have used such language. Therefore we
conclude there was no error in refusing to allow the defendant
to show that he had paid the money over on the executions at
the time the demand was made by plaintiff.

2.   Appellant complains that the court refused to permit him
to prove that, subsequent to the execution and delivery of the

bill of sale, about four tons of ore, "of equal or greater value" than that theretofore hoisted, had been hoisted from the mine, mixed with the ores in the orehouse (which plaintiff had bought), and shipped to the smelter, and were a part of the ores smelted, the net proceeds of which were attached by the defendant and claimed by plaintiff.

The bill of sale under which plaintiff claims describes the property in the following language: "All of our right, title and interest in and to about twenty tons of silver and gold ore now contained in the orehouse and orebins of the West Elba mine, lot 243, T. 3, N. R. 7 W., Silver Bow county, Montana, the said ore having been extracted by the said parties and others."

The first witness for plaintiff testified: "When I received this bill of sale for Mr. Yank I went over to the mine with Mr. Phondorf and told Mr. Hughes about it. He was in charge there at the time. I saw the shipment of ore. It was in the house there. Mr. Hughes showed it to me."

A. P. Phondorf, a witness on behalf of plaintiff, also testified: "Mr. Yank was not there, and I gave the bill of sale to Mr. Lingley, and we together went out to the mine, and Mr. Hughes, the engineer, who was on top, and Mr. Lingley, showed him the bill of sale; and Mr. Hughes showed Mr. Lingley where the ore was, of which the bill of sale was a transfer." On cross-examination, Phondorf testified as follows: "As far as I remember, there was something like nineteen or twenty tons of ore in the bin when we made the sale. I know that because I remember something about the size of the pile. This is an estimate. I did not know the exact weight. * * * The ore we sold Mr. Yank at the time we gave this bill of sale was in the orehouse."

It is clear from the foregoing testimony that the ore intended by Phondorf and Pearson and James to be transferred to plaintiff by the bill of sale was in the orehouse at the mine when the bill of sale was made. On cross-examination of Phondorf, he .further testified as follows: "I did not know whether there was any more ore taken out of the mine, but the mine ran for

a while, because we had to take out the pumps. If you consider that, the mine ran for perhaps four or five days after. The ore we sold Mr. Yank at the time we gave this bill of sale was in the orehouse, and the other was ore hoisted out of the mine after that. I could not tell you how much. It may have been half a ton—something like that. It was not over a ton. Q. Did you not state on cross-examination that there was some ore hoisted out of the mine and put in these bins? A. I thought there had been. I did not know there had been. I could not say there had not been."

Counsel made the following offer of proof as to ores being raised from the mine and placed in the orehouse with the ore in question: "We offer to prove by this witness and the other witness, Mr. Oleson, that after the date of the alleged bill of sale, and before they had any knowledge of it, or notice of its existence, they hoisted about four tons of ore of equal or greater value than the ore that had theretofore been placed in the bins, and placed it in the bins at the West Elba mine, and that this ore was part of the shipment of April 30th, for which plaintiff received the proceeds, and for which this action was commenced." The court excluded this offer, and the defendant alleges error. There is no doubt but that defendant had a perfect right to show that ore had been hoisted and placed in the same bin with the ore in question, and shipped and reduced with the ore in question, after the bill of sale had been given. The bill of sale only purported to convey to plaintiff an undivided one-half of the ore in the orehouse at the date thereof. If more ore was placed therein after that date, and shipped to the smelter, and treated at the smelter, plaintiff certainly could not, under his bill of sale, claim that he was entitled to one-half of the net proceeds of such ore. He did not buy it; it was not conveyed to him; he had no interest in it; yet he seeks in this action to obtain a judgment for an undivided one-half of the proceeds of all the ore shipped to the smelter and reduced at that time.

An examination of the record discloses the further fact that plaintiff called one E. N. Hughes as a witness, who gave testi-

mony on plaintiff's examination that no ore was hoisted from the mine after the execution of the bill of sale; thus demonstrating that plaintiff appreciated the importance of the question, and deemed evidence necessary to be introduced on his side of that issue. After having introduced evidence upon an issue without objection, he should not be allowed to object to the introduction of evidence by the defendant upon the same issue. The offered testimony was very important upon the issue of plaintiff's ownership, which was properly raised by the pleadings, and its exclusion was error.

We advise that the judgment and order appealed from be reversed, and a new trial granted.

Per Curiam.—For the reasons stated in the foregoing opinion, the judgment and order appealed from are reversed, and the cause remanded for a new trial.