STAUFFACHER, RESPONDENT, v. GREAT FALLS PUBLIC SERVICE CO. ET AL., DEFENDANTS; COSTELLO, INTERVENER AND APPELLANT.

(No. 7,365.)

(Submitted March 8, 1935. Decided March 25, 1935.)

[43 Pac. (2d) 647.]

*Mr. W. P. Costello,* for Appellant, appearing *pro se,* submitted a brief and argued the cause orally.

*Mr. H. Norskog,* for Respondent, submitted a brief, and argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

Plaintiff brought this action against Great Falls Public Service Company, a corporation, Fred W. McMullen, Jessie H. Stevens and S. M. Stevens, defendants, seeking a decree adjudging that the defendant corporation held certain lands in Great Falls in trust for the benefit of plaintiff, and that the other defendants had no right, title or interest in and to the lands. The intervener, Costello, asserted his claim to the lands which was initiated by an attachment subsequently ripening into a judgment on which execution was issued, the lands sold thereunder, he becoming the purchaser at sheriff's sale, and that in due course he received a sheriff's certificate and deed to them. The defendants Stevens released their claim, and the action was dismissed as to them. The other defendants made no appearance in the action. The cause was tried upon plaintiff's complaint, the complaint in intervention, and the reply and answer to the complaint in intervention. The trial was before the court sitting without a jury. Findings of fact and conclusions of law were made in accordance with the allegations of plaintiff's complaint, and a judgment was rendered and entered in conformity with the findings and conclusions, awarding the plaintiff the relief demanded by him, and denying the intervener all relief. The appeal is from the judgment.

The intervener asserts in this court for the first time that the complaint does not state facts sufficient to constitute a cause of action. Plaintiff alleged the corporate exist-

ence of the corporation defendant; that on April 1, 1930, he furnished the sum of $6,700 for the purchase price of certain described real estate; that on April 4 thereafter the corporation, to which this sum of money was delivered for the purchase of this real estate, in compliance with his instructions purchased it with these funds and received a conveyance therefor in its own name; that plaintiff paid the entire purchase price for the property, and defendant corporation took the property in fact as trustee for him, and he is now the absolute owner thereof; that the corporation has no right or title, claim or interest, in and to the real estate other than as trustee for plaintiff; and that the deed conveying the property, dated April 4, 1930, was thereafter, on April 6, recorded. The complaint contains other allegations as to the claims asserted by the other parties defendant.

This contention of intervener being raised for the first time on appeal, the objection urged is looked upon with disfavor, and every reasonable inference will be drawn from the facts stated necessary to uphold the complaint. (*Blackwelder* v. *Fergus Motor Co.*, 80 Mont. 374, 260 Pac. 734, and cases there cited.)

The complaint was drafted apparently upon the theory of seeking to enforce a resulting trust. Section 6785, Revised Codes 1921, provides: "When a transfer of real property is made to one person, and the consideration thereof is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made." This section was formerly section 1312, Civil Code of 1895, and was considered by this court in *Lynch* v. *Herrig*, 32 Mont. 267, 80 Pac. 240, and what was there said with reference to this statute was quoted with approval in *Eisenberg* v. *Goldsmith*, 42 Mont. 563, 113 Pac. 1127, 1129, wherein questions pertinent to this inquiry were determined by the following language: "(1) That the statute above .'is but declaratory of the common law.' (2) 'That, in order to raise a resulting trust, the payment of the money as the consideration for the purchase of the property must be made at the time or before the legal title to the

property passes to the party to be charged in the trust capacity, and that any moneys paid or contracts or agreements made thereafter are not sufficient to raise a resulting trust.' (3) 'The statute of frauds has nothing to do with the case.' (4) 'This resulting trust does not arise from, or depend on, a contract or agreement between the parties. It is independent of any contract and arises by operation of law from the fact that the consideration for the purchase of the property was paid by one person, and the title to the property purchased, taken in the name of another.' (5) 'While the agreements or contracts between parties do not of themselves form the basis of any relief as to the trust, they may be important for consideration in assisting to establish the fact of the ownership of the money and how it was invested.' But the one fundamental idea running through the statute is that the money paid was in fact the money of the person who claims the existence and benefit of the trust. It is immaterial whether the payment was made by him personally or for him by another; but in either instance the payment must have been made with his money.''

Testing the allegations of this complaint by these rules, and in the light of the rule of liberal construction to be applied in the circumstances of this case, we think the complaint is sufficient as against the objection here made.

Intervener argues that the court was without jurisdiction to render a judgment against the corporation. It appears from the record that the defendant corporation was not served other than by an unacknowledged admission of service on its behalf, purporting to have been executed by one Carl E. Mohs, ''its secretary.'' Other documents are found in the record as exhibits, executed by this same person as ''acting secretary'' of the corporation. The signature was not witnessed or otherwise approved. As already noted, the corporation did not appear, but, based on this admission of service, its default was entered before trial.

This contention would present a serious question were it not for certain other facts which we will presently notice, and which, we think, obviate the necessity of deciding the question. Plaintiff urges that intervener is in no position to urge this defect, in that the court might, in its discretion, render judgment against one or more of the defendants, leaving the action to proceed against others whenever a several judgment is proper. (Sec. 9315, Rev. Codes 1921; *State ex rel. Stiefel* v. *District Court*, 37 Mont. 298, 96 Pac. 337.) But plaintiff apparently loses sight of the duty enjoined upon the court, under section 9090, to bring in necessary parties to a complete determination of the controversy. (*McKenzie* v. *Evans*, 96 Mont. 1, 29 Pac. (2d) 657.) Ordinarily, in a case of this character, the corporation defendant would be a necessary party defendant here. (*Sanborn* v. *Loud*, 150 Mich. 154, 113 N. W. 309, 121 Am. St. Rep. 614.)

It was testified to on the trial that, after this action was commenced, the defendant corporation delivered to plaintiff's counsel, after demand, a deed conveying the property to plaintiff. The action was begun on November 18, 1931. The deed was offered and received in evidence and bore date October 13, 1931. It was executed on behalf of the corporation by J. W. Murphy, president, and Carl Mohs, acting secretary. The record does not contain a copy of the acknowledgment, but it is recited therein that the deed was "duly acknowledged and notarial seal attached to acknowledgment." The record is barren of any proof of authority in the president and acting secretary to execute the deed; it is, however, conceded by all that Mr. Murphy was the president of the corporation. There is much controversy found in the record as to whether Mohs was in fact the secretary of the corporation.

In the case of *Gotzian & Co.* v. *Norris*, 89 Mont. 307, 297 Pac. 489, 490, this court made the very pertinent inquiry as applied to the facts in this case relating to the power of corporate officers and the proof thereof: "The question presented under the acknowledged assignment is: Was there sufficient

proof of the authority of the vice president to sign and acknowledge it?" And, after reviewing the statutes and authorities, answered the inquiry in the following language: "The fact that the secretary did not sign the instrument does not affect its validity if the vice president was authorized to execute it. (*Mayger* v. *St. Louis M. & M. Co.*, 68 Mont. 492, 219 Pac. 1102.) We think the fact that the vice president was authorized to make the assignment must be presumed from the certificate of the notary public, reciting that he acknowledged that the corporation executed it. That was sufficient proof to make out a prima facie case of the due execution of the assignment by the corporation, in the absence of any proof to the contrary, as here."

The form of acknowledgment provided by section 6915, Revised Codes 1921, contains the recital of facts enumerated in the foregoing quotation. There is no evidence in the record contradicting the presumed authority of the president of the corporation who executed the deed in its behalf.

The defendant corporation, having conveyed all its right, title and interest in and to these lands in controversy, was no longer, after delivery of the deed, a necessary party to this action, although, perhaps, a proper party. (*Carter* v. *Uhlein*, (N. J. Ch.) 36 Atl. 956; *Larom* v. *Fabre*, 173 App. Div. 895, 157 N. Y. Supp. 1053.) The court, therefore, in the circumstances of the case, could proceed to cause entry of a judgment as against the intervener irrespective of the question of jurisdiction as to the corporation, in the absence of service of process upon it. (*Corbin* v. *Howard*, 61 Cal. App. 715, 215 Pac. 920.) The contention of the intervener is without merit.

Intervener urges that the evidence is insufficient to support the findings and judgment declaring a trust in these lands. Plaintiff, together with others, organized the defendant corporation for the purpose of constructing a central heating plant in the city of Great Falls. A franchise for that purpose was secured from the city. The lands here in controversy were purchased from the city for the location of the heating plant.

It was contemplated by the promoters that Smith Bros., a firm of brokers in Chicago, would negotiate stocks and bonds of the corporation and thereby raise funds with which to complete these plans. However, owing to the depression, the stocks and bonds were not sold. Plaintiff was a director but not an officer of the corporation. A deed conveying the property in question from the city to the defendant corporation, without any mention therein of any trust capacity dated August 4, 1930, was offered and received in evidence. The mayor of Great Falls testified that the consideration for the deed was $6,800, which was paid to the grantor by a "Chicago draft." Plaintiff testified as follows: "Q. State further by whom such purchase price was paid, if you know. A. Well, I furnished the money and I gave it to the Smith Bros., in Chicago, and they turned the money over to the parties that owned the property. I don't know who the people were."

He further testified that he had not been repaid the purchase price in whole or in part, and that he advanced the money in the spring or summer of 1929. On cross-examination he said that he put into the company "about all told around between $10,000 and $12,000; part of it was for the property out there and part of it for stock"; that he paid this money over to Smith Bros. by check; that the corporation agreed to turn the property over to him to pay him for the money advanced; and that, at the time the corporation paid for the land, the proceeds of his check for $8,000 was the only money the corporation had; and that Smith Bros. took the proceeds of the check and sent the purchase price out to pay for the land. Counsel for plaintiff testified that he made demand on the various corporate officers for a conveyance of the property, and that it was conveyed to plaintiff as noted above.

A resulting trust is created by operation of law, not by contract, and may be proved by parol evidence. (*McQuay* v. *McQuay*, 81 Mont. 311, 263 Pac. 683, 686; *Wilson* v. *Wilson*, 64 Mont. 533, 210 Pac. 896; *Feeley* v. *Feeley*, 72 Mont. 84, 231 Pac. 908.) Intervener argues in support of his

contention last above made that plaintiff's evidence is in most respects without corroboration; that the testimony of Smith Bros., the brokers in Chicago, who forwarded the funds, is absent from the record, and that the evidence is not clear, full, and satisfactory, as it has been said by this court is necessary to establish a trust. (*McQuay* v. *McQuay*, supra; *Lynch* v. *Herrig*, supra.) However, this court in the *McQuay Case*, in discussing this very question, said: "It is also true that evidence to establish a trust must be clear, convincing, and satisfactory and practically free from doubt. When is the evidence of that character? The answer must be that if it has satisfied the conscience of the chancellor before whom the trial was had and this court cannot say that the evidence clearly preponderates against the finding the requirement must be held to be satisfied. We must follow the oft-repeated rule that this court will not overturn the findings of the trial court unless there is a decided preponderance of the evidence against them; and when the evidence, fully considered, furnishes reasonable grounds for different conclusions, the findings will not be disturbed. (*Allen* v. *Petrick*, 69 Mont. 373, 222 Pac. 451; *Gravelin* v. *Porier*, 77 Mont. 260, 250 Pac. 823.) It must be remembered that a preponderance of the evidence may be established by the testimony of a single witness against a greater number of witnesses who testify to the contrary. (*Doane* v. *Marquisee*, 63 Mont. 166, 206 Pac. 426; *State ex rel. Bourquin* v. *Morris*, 67 Mont. 40, 214 Pac. 332; *Robinson* v. *Woolworth Co.*, supra [80 Mont. 431, 261 Pac. 253]." The trial court heard the case and found in favor of the plaintiff, and we are unable to say that the evidence preponderates against the decision. It satisfied the conscience of the trial judge, and there was sufficient evidence, if believed, as it was, to support the findings and judgment declaring a resulting trust in the lands in favor of the plaintiff.

Error is assigned upon the ruling of the court rendering judgment against the intervener and denying him all relief. The claim of intervener as against the land in controversy

arises out of the following facts: McMullen and Arian brought action on November 6, 1930, against the defendant corporation seeking to recover a judgment for labor performed in the year 1930 prior to the commencement of the action. At the time of filing their complaint, a writ of attachment issued and the lands here involved were attached. The defendant in that action filed answer, and a trial was had on the issues raised, resulting in a judgment being rendered in favor of the plaintiffs for $394.20 on November 19, 1931. This judgment was assigned for a valuable consideration to the intervener. Execution issued on the judgment, and the real estate attached in that action was sold to the intervener on December 29, 1931. A sheriff's certificate of sale, and thereafter a deed, was issued to him. Plaintiff at the commencement of this action filed a *lis pendens*.

It will be noted that the attachment in the *McMullen Case* was levied prior to the commencement of this action. The intervener testified that the cause of action or claim was assigned to him at the time of the commencement of that action, although the suit proceeded in the name of the original parties, which may be done. (*Osborne* v. *McDonald,* 91 Mont. 83, 5 Pac. (2d) 568.) Intervener further testified that he had no notice or knowledge of any claim made by plaintiff as against the lands until after the commencement of plaintiff's action herein.

Section 6786, Revised Codes 1921, provides: "No implied or resulting trust can prejudice the rights of a purchaser or encumbrancer of real property for value and without notice of the trust." As we understand intervener's contention, it is to the effect that in the facts and circumstances he is entitled to the protection of this statute. This court in the case of *Short* v. *Karnop,* 84 Mont. 276, 275 Pac. 278, 280, had under consideration the question of priority of claim between the holder of an attachment lien on real estate and the grantee under a prior deed unrecorded until after the levy of the attachment. The court in that case found it necessary, in

solving the question there at hand, to consider section 6935, the pertinent portion of which provides: "Every conveyance of real property * * * is void against any subsequent purchaser or encumbrancer * * * in good faith and for a valuable consideration, whose conveyance is first duly recorded." It there determined that an attaching creditor was not an encumbrancer within the language of the statute (sec. 6935), and said: "As the lien of the attachment but seizes upon that which the debtor owns to hold it as security for the satisfaction of such judgment as may thereafter be secured, can it be said that even the broad term 'incumbrancers' includes attaching creditors? We think not. It has been heretofore clearly intimated that, an attaching creditor is neither a bona fide purchaser nor an incumbrancer of the attached property, and therefore succeeds to and acquires only the rights of his debtor, at the time of the levy. (*Oppenheimer* v. *First National Bank,* 20 Mont. 192, 50 Pac. 419; *Yank* v. *Bordeaux,* 23 Mont. 205, 58 Pac. 42, 75 Am. St. Rep. 522.)" And again in the same opinion it is written: "As the attachment but preserved the property until it could be sold on execution, the rules defining the rights of a purchaser on execution sale must govern the rights of the attaching creditor. Section 9441, Revised Codes 1921, declares in part: 'Upon a sale of real property, the purchaser is substituted to and acquires the right, title, interest, and claim of the judgment debtor.' This rule is but declaratory of the well-settled rule of the common law, and of the rule as to attaching creditors, in the absence of special statutory modification, stated above, and by reason thereof it is held in this jurisdiction that the rule of *caveat emptor* applies to such a sale, and the purchaser acquires only the title of the judgment debtor, subject to all the rights and equities of third persons which are capable of being enforced against the judgment debtor. (*MacGinniss Realty Co.* v. *Hinderager,* 63 Mont. 172, 206 Pac. 436.)"

This court definitely decided in the case of *Short* v. *Karnop,* supra, that an attaching creditor was not "a purchaser or

encumbrancer, in good faith and for a valuable consideration," and hence an attachment creditor is not a purchaser or encumbrancer for value and without notice. Accordingly, the intervener's contention is without merit.

Judgment affirmed.

ASSOCIATE JUSTICES MATTHEWS, STEWART and MORRIS concur.

MR. CHIEF JUSTICE SANDS, being absent on account of illness, did not hear the argument, and takes no part in the foregoing opinion.

Rehearing denied April 1, 1935.