HITCHNER & HITCHNER, INC., RESPONDENT, v. FOX, APPELLANT.

(No. 7,980.)

(Submitted December 14, 1939. Decided January 19, 1940.)

[98 Pac. (2d) 327.]

594

Mr. A. S. Ainsworth, for Appellant, submitted a brief and argued the cause orally.

Mr. A. A. Alvord and Mr. Everett E. Hunt, the latter of the Bar of Idaho, for Respondent, submitted a brief; Mr. Alvord argued the cause orally.

HONORABLE S. D. McKINNON, District Judge, sitting in place of MR. JUSTICE ARNOLD, disqualified, delivered the opinion of the court.

Plaintiff, an Idaho corporation, brought this action to re- cover $1,854 for the alleged conversion of cedar posts. It is alleged that on the 1st day of December, 1931, the plaintiff was the owner of 35,000 posts of the value of 6¢ each, and between that date and July 1, 1937, the defendant unlawfully appropriated 30,900 of said posts, but that plaintiff did not gain knowledge of this fact until on or about July 1, 1937, and that demand for payment was made and refused.

In his answer, the defendant denied the allegations of the complaint except he admitted that in the year 1931 there were posts in Thompson Falls, Montana, which the plaintiff had pur-

chased from him, but he alleged the purchase price had not been paid. He also alleged that he sold a large number of posts, and that he had the right to do so. In addition, he filed a counterclaim in which he set forth that on or about the 3d day of September, 1929, he and the plaintiff entered into a written contract whereby the plaintiff agreed to buy and he agreed to sell certain timber products at an agreed price, and that pursuant thereto, he did deliver to the plaintiff ''on the landing'' at Thompson Falls, Montana, 35,000 posts and 519 poles at the contract price of $5,612.40, and they were accepted by the plaintiff, and thereupon there became due the sum of $4,209.30, or 75 per cent. of the agreed purchase price therefor; that demand for payment was made and refused, and thereafter an action was instituted in the United States District Court of Idaho, Northern Division, which, after trial before a jury, resulted in a judgment in favor of the defendant herein for the total sum of $4,497.26, which represented 75 per cent. of the contract price due on said timber products and also the sum of $50.70 balance due under a prior contract, together with costs of suit and interest at 7 per cent. to date of judgment.

In its reply, the plaintiff herein denied it had ever entered into a written contract with the defendant for the purchase of timber products, but alleged that some products had been purchased from the defendant for which payment had been made. It admitted the judgment in the federal court, but denied it was for only 75 per cent. of the purchase price of timber products, and alleged that the judgment was for all sums of money due the defendant arising out of the alleged contract.

This cause was tried before the lower court without a jury, and findings and judgment were made in favor of the plaintiff, less an offset in favor of the defendant in the sum of $722.50, which represented 25 per cent. of the purchase price of the posts in question, together with taxes and insurance premiums, and judgment was entered for the plaintiff on January 28, 1939, for the sum of $1,153.50 and costs. From this judgment the defendant has appealed.

Seventeen assignments of error are urged by the defendant, but all relate to the insufficiency of the evidence to justify

the findings. The burden of proof was upon the plaintiff to prove the allegations of its complaint by a preponderance of the evidence, and one of the essential elements to be proved was that it was the owner of the property mentioned in its complaint. If, as the defendant asserts, he was entitled to sell such property, then the plaintiff cannot prevail.

On September 3, 1929, the parties hereto entered into a written agreement whereby the plaintiff agreed to buy and the defendant agreed to sell certain timber products at a stated price, to be delivered "on the landing" near the Northern Pacific Railway tracks in Thompson Falls, Montana, and when so delivered, 75 per cent. of the contract price was to become immediately due and payable, and the remaining 25 per cent. when the material was shipped. Thereafter, and prior to September 1, 1930, the defendant did deliver, according to the terms of the contract, 35,000 posts and 519 poles which were accepted by the plaintiff, and demand was made upon it by the defendant for the 75 per cent. of the contract price in the sum of $4,209.30, which was refused. Thereafter, an action was commenced in the United States District Court of Idaho, Northern Division, for the recovery of such amount, which, after trial before a jury, resulted in a judgment in favor of the defendant herein and against the plaintiff for $4,209.30, and in addition for a small balance owing defendant on a previous contract, and on November 30, 1931, judgment was entered against the plaintiff herein for the sum of $4,497.26, which included costs and interest to said date.

Execution was issued upon the judgment in the foregoing action, and on January 5, 1932, the attorney for the plaintiff therein (the defendant herein), and the attorney for the defendant therein (plaintiff here), entered into the following stipulation:

"It is Stipulated between counsel for plaintiff and defendant in this case that, in consideration of the payment of $2,500.00 cash on the judgment entered herein, the receipt whereof is hereby acknowledged, the plaintiff shall withhold the levy of execution for the balance of the judgment until April 1, 1932, upon the conditions following:

"The title and right of possessions to the poles, posts and timber products involved in this case shall remain in plaintiff until the balance of the judgment is paid; provided, however, that in the meanwhile defendant may ship as much of said timber products now 'on landing' as he may desire to ship, paying to plaintiff at the time of loading the full contract price for the amount so loaded and shipped, until such time as the judgment, with accrued interest and costs and the full purchase price stipulated by the contract is paid. If not fully paid by April 1, 1932, plaintiff may at once and without notice sell sufficient of said poles and posts to pay all balance due him on said judgment and for the full contract price for all of said poles and posts, together with whatever costs and expenses may be incurred in connection with such sale."

Thereafter, several letters passed between the attorneys for the respective parties hereto, seeking a liquidation of the contract price of the timber products, and on March 30, 1932, they signed another stipulation in which it was agreed that the time for payment of the balance of the foregoing judgment was extended to April 15, 1932, upon the same terms and conditions as the original stipulation of January 5, 1932, save and except that until that time the defendant, Fox, was given the option to sell the poles and retain the proceeds of sale in settlement of the contract price thereof, or he could take them over on the same basis. Later, and before the expiration of the extension agreement, the parties agreed:

"In case Fox elects to take over the poles, it is agreed that the balance unpaid on the judgment and contract between the parties, including interest on the judgment to April 15, 1932, is $1,144.66, and 25% of the contract price of the posts.

| | |
|---|---:|
| Balance due on judgment | $1,997.26 |
| Interest on judgment to April 15th | 69.60 |
| 25% still due on poles, not included in judgment | 680.60 |
| | 2,747.46 |
| Credit by Fox taking over poles | 1,602.80 |
| | $1,144.66" |

It appears that the defendant herein did not elect to take the poles under the foregoing arrangement, and in August, 1932, he listed all poles and posts for sale to L. D. McFarland and Company, and thereupon that company made inquiry of the attorney for the plaintiff herein, whether Fox had the right to sell them, and the following reply was made under date of December 24, 1932: "In reply to your inquiry in regard to the cedar poles and posts at Thompson Falls, Montana, which were manufactured by George Fox, you are advised that Hitchner and Hitchner, Inc., have no claim on these poles or posts, as Hitchner & Hitchner, Inc. have a contract for the purchase of these poles delivered on cars, but title of the poles has never passed from Mr. Fox, and if you purchase any of these products from Mr. Fox he can give you good title free of any claim of Hitchner & Hitchner, Inc."

It seems clear from the foregoing letter that the defendant Fox had not elected to take over the poles under his option, and, the balance of the judgment not having been paid by April 15, 1932, he was exercising his right to sell the timber products under the stipulation of January 5, 1932, which the parties agreed was to apply if the option of March 30, 1932, was not accepted.

Thereafter, the defendant herein did sell the poles and posts to said company for $1,250. He explains that this amount was the best price he could obtain for them owing to the economic conditions existing at that time. Upon the trial the plaintiff herein introduced evidence purporting to show that the market value of the posts in 1932 and 1933 was 6¢ each, but the evidence is wanting that it made any effort to procure a buyer, although it would have been greatly to its interest so to do.

The evidence shows that the poles were shipped in June, 1933, and the bulk of the posts were shipped from time to time during a period of three years thereafter, but some were on the landing after the payment of the judgment by the plaintiff in June, 1937. Apparently, the plaintiff did ship a number of these posts, but at the time of shipment it was informed that the posts had been sold to the McFarland Company.

Nothing further was done by the plaintiff in regard to these timber products from 1932 until the defendant in May, 1937, asked it to pay the balance of the judgment. In answer to this request, counsel for the plaintiff stated that the plaintiff understood the property to be sold in Montana was sufficient to pay or satisfy the judgment. Then counsel for the defendant erroneously informed counsel for the plaintiff that the poles had been taken over by the defendant on or about the 1st day of April, 1932, at the figures hereinbefore mentioned. This error was called to the attention of the plaintiff and its counsel, and they were also informed that the poles and posts had been sold to McFarland Company, under the stipulation of January 5, 1932, for $1,250. The defendant agreed, however, to accept those figures for the settlement of the judgment, and these figures, as will be noted, took into consideration the 25 per cent. of the contract price of the poles, or the sum of $680.60. Possessed of this information, the plaintiff paid the sum of $1,554 in settlement of the judgment. This left a balance due on the original contract of $722.50, or 25 per cent. of the contract price for the posts.

We are mindful of the well established rule "that this court will not overturn the findings of the trial court unless there is a decided preponderance of the evidence against them; and when the evidence, fully considered, furnishes reasonable grounds for different conclusions, the findings will not be disturbed." (*Stauffacher* v. *Great Falls Public Service Co.*, 99 Mont. 324, 332, 43 Pac. (2d) 647.) But here, the evidence strongly preponderates against the findings, and when fully reviewed, leads only to one conclusion, namely, that the defendant had the right to sell the posts mentioned in the complaint herein.

Counsel for the plaintiff contends that if the defendant had the right to sell the property, he should be charged with the contract price. This position cannot be sustained, as it will be noted by the stipulation of January 5, 1932, that if the judgment was not paid by April 1st—later extended to April 15th—the defendant herein could "without notice sell suffi-

cient of said poles and posts to pay all balance due him on said judgment, and for the full contract price of all of said poles and posts, together with whatever costs and expenses may be incurred in connection with such sale''. It seems clear that, aside from the payment of the judgment, the parties had in mind the 25 per cent. still due on the contract, and did not fix any price for which the property should be sold by the defendant.

The respondent makes one cross-assignment of error in which he urges that the appellant is precluded from claiming there is 25 per cent. due upon the contract for the purchase of the timber products, as this matter could have been litigated in the action in the federal court herein mentioned. But in view of the fact that no cross-appeal was taken, we must decline to consider this alleged error. It is evident that it could in nowise compensate for the alleged errors claimed by appellant. (Sec. 9751, Rev. Codes 1935; *In re Silver's Estate,* 98 Mont. 141, 38 Pac. (2d) 277; *Osnes Livestock Co. et al.* v. *Warren,* 103 Mont. 284, 300, 62 Pac. (2d) 206.) It is pertinent to say, however, that the federal court litigation related only to the 75 per cent. of the contract price of the timber products, and that the subsequent stipulations of the parties contemplated the payment of the other 25 per cent.

The cause is reversed and is remanded with directions to modify the findings in conformity with this opinion, and to dismiss the plaintiff's cause of action and to enter judgment in favor of the defendant on his counterclaim in the sum of $722.50.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES MORRIS, ERICKSON and ANGSTMAN concur.