REAGAN, Appellant v. ARMSTRONG, SHERIFF, Respondent.

No. 8556

Submitted September 12, 1945. Decided January 18, 1946.

165 Pac. (2d) 1004

Mr. S. J. Rigney, of Cut Bank, for appellant.

Mr. Lloyd A. Murrills, of Cut Bank, and Mr. W. R. McDonald, of Browning, for respondent.

MR. JUSTICE ADAIR delivered the opinion of the court.

The plaintiff, Nedra Reagan, commenced this action to recover of the defendant, A. E. Armstrong, sheriff of Glacier County, Montana, damages for the conversion of four particularly described mares of the reasonable value of $300 each, alleged to have been wrongfully, maliciously and unlawfully seized on or about the 16 day of August 1940 by the defendant sheriff.

The defendant filed an answer admitting that at the time alleged he was the sheriff of Glacier county, Montana, but denying generally all plaintiff's other allegations.

As a second defense, the defendant alleges that at the times mentioned the mares were "the property of J. J. Galbreath, J. W. Galbreath, Galen G. Galbreath, Kenneth Galbreath, Edward Aubert and Frank Aubert, or all of them and not the property of Plaintiff."

As a third separate defense, defendant pleaded estoppel.

For a fourth separate defense the defendant alleged that plaintiff's claim of title is based upon an alleged transfer to her of the animals made by a transferor who subsequently made, executed and delivered a chattel mortgage covering the property; that the alleged transfer was not accompanied by an immediate delivery nor was it followed by an actual and continued change of possession of the things transferred for which reasons the transfer is fraudulent and void as against the owners and holders for value of the promissory notes and chattel mortgage securing same made, executed and delivered by the transferor and as against the defendant sheriff acting at the direction of the mortgagees and pursuant to the terms of the chattel mortgage after default by the transferor mortgagor who remained in possession of the described property until the seizure thereof by the sheriff. By reply plaintiff denied generally the allegations of each separate defense contained in defendant's answer.

On petition therefor the District Court permitted the mort-

gagees named in the above chattel mortgage, viz.: Sherburne Mercantile Company, a corporation, and R. B. Fraser, to file a complaint in intervention setting forth three separate causes of action based upon the same grounds and ultimate facts pleaded in the answer of defendant.

The plaintiff by answer denied generally the allegations of the complaint in intervention. The cause was tried to a jury and verdict returned for defendant and interveners. From the judgment on such verdict plaintiff has appealed.

Plaintiff contends that, "the verdict of the jury and judgment is contrary to law and the evidence."

In her pleadings the plaintiff alleged that at the time the sheriff seized the property she "was and still is the owner of and entitled to the immediate possession of" four described mares all sired by a stallion named "Plenipotentiary" and each branded Lazy H X on the left jaw.

Plaintiff testified that she is a daughter of J. J. Galbreath and a sister of Galen G. Galbreath; that the four described mares claimed by her in this cause were formerly owned by her brother, Galen G. Galbreath, and kept by the latter on the J. J. Galbreath ranch located about 30 miles north of Browning in Glacier county, Montana, where Galen, as well as three of his brothers, resided with their father; that in the year 1936 she traded Galen certain cattle for the animals which were then colts; that at the time of the trade she was in Milwaukee, Wisconsin, where she then resided and that her brother Galen selected the horses which she was to receive in exchange for her cattle; that she trusted Galen's judgment in selecting the horses and that it was probably two and a half years after the trade before she returned to Montana and saw the animals for which she had traded; that the animals were kept at the J. J. Galbreath ranch before her trade with Galen and that after the trade Galen continued to pasture the animals at the same ranch and perhaps use them as he had before; that in August 1940 when the defendant sheriff seized the mares, the plaintiff

was then employed and residing at St. Mary's Chalet, in Glacier National Park.

Galen G. Galbreath, a witness for plaintiff, testified that in 1936 he traded plaintiff two mares and ten head of colts for eight or nine head of stock cattle owned by her; that the four mares described by plaintiff in her pleadings are either animals which he transferred to plaintiff in 1936 or their off-spring; that four of the colts so transferred by him to plaintiff were eligible for registration with the American Remount Association; that after the trade the animals were all kept by him in the same pastures and fields on the J. J. Galbreath ranch where they had been kept prior to such trade; that in 1940 when the mares were seized by the sheriff the plaintiff was employed at St. Mary's Lake and spent little of her time at the J. J. Galbreath ranch and that the witness Galen looked after plaintiff's livestock and took care of her property at the ranch.

There was introduced in evidence a chattel mortgage dated August 25, 1939, securing a promissory note in the principal sum of $3,500 duly signed and acknowledged by Galen G. Galbreath, his father and three of his brothers as mortgagors to J. L. Sherburne, mortgagee, wherein, among other property, there is listed and particularly described as the property of Galen G. Galbreath seventeen head of mares, colts and geldings all registered with the American Remount Association and all branded Lazy H X on the left jaw, being the same brand which plaintiff testified she used to identify the four mares described by her in her pleading herein.

A second chattel mortgage was introduced in evidence, dated May 18, 1940, securing two promissory notes in the aggregate principal amount of $2,859.84 duly signed and acknowledged by Galen G. Galbreath, his father and two of his brothers as mortgagors, and naming the interveners, Sherburne Mercantile Company and R. B. Fraser, as mortgagees wherein the mortgagors mortgaged to the mortgagees two hundred head of geldings, stallions, mares and colts of mixed ages bearing one or more of seven designated brands and all situate in Glacier

county, Montana, said described property "being all of the property of the kind described, owned by the mortgagor at the time of making this mortgage; and this mortgage includes, also all property of like kind, hereafter and during the life of this mortgage, acquired by the mortgagor by either increase, or purchase, or by exchange or substitution for property herein described."

Evidence was introduced that in May 1940 and subsequent to the filing in the office of the county clerk and recorder of Glacier county of the chattel mortgage of May 18, 1940, that Galen G. Galbreath and his father and brothers orally agreed that certain horses described in a "tally book" prepared at the J. J. Galbreath ranch by the witness Lou Oliver, and initialed by said Galbreaths, including Galen G. Galbreath, should be covered by the terms of the chattel mortgage as though same had been fully described in such mortgage and the pages from such "tally book" so listing and describing the horses were received in evidence wherein are described 18 head branded Lazy H X on the left jaw listed as six mares, seven geldings, one stud, and four head with the sex not given.

There was evidence that after default on the part of the mortgagors the mortgagees delivered a certified copy of the chattel mortgage of May 18, 1940, to the defendant sheriff with directions to him to execute the power of sale in such mortgage granted and that pursuant thereto and because of his official duties the defendant sheriff thereafter seized, took possession of and sold a portion of the horses described in the mortgage including the four mares described in plaintiff's pleadings.

The undisputed evidence introduced on behalf of plaintiff ▮ shows that her brother Galen G. Galbreath, the reputed original owner of the four animals described in plaintiff's pleadings, continued in possession and control of the property after the alleged transfer in 1936 and until the mares were seized by the sheriff at the J. J. Galbreath ranch in August 1940 or between that time and March 4, 1941, when the mares were sold by the sheriff at public auction. Since the purported transfer

from Galen G. to plaintiff was not accompanied by an immediate delivery nor followed by an actual and continued change of possession of the property, the transaction is conclusively presumed to be fraudulent and therefore void, against encumbrancers in good faith subsequent to the purported transfer. Section 8604, Revised Codes of 1935; O. W. Perry Co. v. Mullen, 81 Mont. 482, 263 Pac. 976, 56 A. L. R. 514; Brown v. Federal Surety Co., 91 Mont. 389, 8 Pac. (2d) 647; Jackson v. McDonald, 115 Mont. 269, 143 Pac. (2d) 898, 901.

One of the essential elements which plaintiff was required to prove was that she was the owner of the property described in her pleadings. As against the intervening creditors and mortgagees owning and holding the unpaid promissory notes and chattel mortgage made, executed and delivered by Galen G. Galbreath, the original transferor of the chattels described in plaintiff's pleadings and covered by such mortgage, and as against the defendant sheriff acting at the direction of the mortgagees and pursuant to the terms of the mortgage, the purported transfer is conclusively presumed to be fraudulent and therefore void. The statute, section 8604, Revised Codes, precluded plaintiff from relying on the purported transfer to her of 1936, hence her proof wholly failed to establish her ownership and right of possession of the property and such failure of proof was and is fatal to the action. Bohart v. Songer, 110 Mont. 405, 101 Pac. (2d) 64; Guthrie v. Holloran, 90 Mont. 373, 3 Pac. (2d) 406; Hitchner & Hitchner v. Fox, 109 Mont. 593, 98 Pac. (2d) 327.

There is nothing in any of the other specifications relied upon by plaintiff which would cure the failure of plaintiff's proof to establish her cause of action or that would change the result herein. The judgment is affirmed.

Mr. Chief Justice Johnson and Associate Justices Morris, Angstman and Cheadle concur.

Rehearing denied March 4th, 1946.