FEELEY, Appellant, *v.* FEELEY, Respondent.

(No. 5,559.)

(Submitted December 8, 1924. Decided December 19, 1924.)

[231 Pac. 908.]

*Resulting Trusts — Complaint — Sufficiency — Evidence — Admissibility—Equity—Motion to Dismiss—Denial—Right of Defendant to Introduce Proof.*

Resulting Trust—Created how—May be Proved by Parol.
1. A resulting trust in real property is created by operation of law, not by contract, and may be proved by parol evidence.

Same — Payment of Purchase Price — Time — Date of Contract Immaterial.
2. While in order to raise a resulting trust, the payment of the money as the consideration for the purchase of the property must have been made at the time or before the legal title to it passes to the party to be charged in the trust capacity, the fact that the contract of purchase entered into by defendant antedated the passing of title some weeks was immaterial.

Equity—Motion to Dismiss—Effect on Right of Defendant to Introduce Proof.
3. In a suit in equity when a defendant at the conclusion of plaintiff's case moves for judgment and the motion is sustained, the defendant will be held to have elected to stand upon the case as made by plaintiff; if, however, the motion is denied, defendant may proceed with his evidence as if the motion had not been made.

Same—Duty of Parties to Introduce All Their Proof.
4. In an equity case it is the duty of the parties to introduce all of their testimony to enable the supreme court, under section

[72 Mont. 84.]

8805, Revised Codes of 1921, to determine finally the questions properly determinable.

**Same—Motion to Dismiss—Effect of Motion.**

5. A motion to dismiss an equity case made after submission of plaintiff's proof is in effect a motion for judgment in defendant's favor upon the merits,—a declaration on his part that if the motion be granted he elects to stand upon the case as presented by plaintiff.

**Resulting Trust—Evidence Admissible.**

6. In an action to establish a resulting trust in property purchased principally with funds furnished by plaintiff, the contract, executory in character, under which it was purchased, as well as the facts and circumstances surrounding the transaction, were admissible in evidence as tending to explain the conditions under which, and the reasons why, plaintiff entrusted her money to defendant, her sister.

**Complaint—When Deemed Sufficient—Duplicity—Absence of Special Demurrer.**

7. Under the rule that if a complaint discloses that plaintiff is entitled to any relief whatever, upon any theory, it will be sustained, where the complaint was duplicitous but a special demurrer was not interposed on that ground, and the pleading stated a cause of action on one of two theories advanced, it was sufficient as against a general demurrer.

*Appeal from District Court, Silver Bow County; Wm. E. Carroll, Judge.*

ACTION by Emma C. Feeley against Mary Feeley. Judgment for defendant, and plaintiff appeals. Reversed and remanded, with direction to grant new trial.

*Mr. A. C. McDaniel* and *Mr. N. A. Rotering,* for Appellant, submitted a brief; *Mr. Rotering* argued the cause orally.

When property is paid for with the money of one person and the title taken in the name of another, the person holding the title is a trustee for the person whose money paid for the property. A resulting trust is created. (Sec. 6785, Rev. Codes; *Wilson* v. *Wilson,* 64 Mont. 533, 210 Pac. 896; *Lynch* v. *Herrig,* 32 Mont. 267, 80 Pac. 240; *Eisenberg* v. *Goldsmith,* 42 Mont. 563, 573, 113 Pac. 1127; *Clary* v. *Fleming,* 60 Mont. 246, 250, 198 Pac. 546; *Faylor* v. *Faylor,* 136 Cal. 92, 68 Pac. 482; *Simon* v. *Gulick,* 21 Ky. Law Rep. 104, 50 S. W. 992; *Reynolds* v. *Summer,* 126 Ill. 58, 9 Am. St. Rep. 523, 1 L. R. A. 327, 18 N. E. 334.)

Where land is purchased by one in his own name with money of another, a resulting trust is created by implication of law, which follows the ownership of the money; and where only a part of the purchase money is furnished by the beneficiary the trust is for a proportional share of the land bought. (*Stevenson* v. *Smith,* 189 Mo. 447, 88 S. W. 86; *Hines* v. *Light,* 83 Iowa, 737, 49 N. W. 105.)

"The real facts as to the payment of the money by a third person may be proved by parol, even though the deed recites that the consideration was paid by the person named as grantor therein; and it may be shown by parol that the purchase price was wholly or partly paid by another person, and a trust *pro tanto* may thus be created." (Jones on Evidence, sec. 422; *Case* v. *Codding,* 38 Cal. 191; 39 Cyc. 159.)

*Mr. Ed. Fitzpatrick,* for Respondent, submitted a brief and argued the cause orally.

Appellant contends that the complaint states sufficient facts to show a resulting trust. Respondent contends that the complaint shows an express trust. (Sec. 6784, Rev. Codes; *Lynch* v. *Herrig,* 32 Mont. 267, 80 Pac. 240; *Barger* v. *Barger,* 30 Or. 268, 47 Pac. 702.)

"The mere fact that one person's money is used in making improvements on another person's land does not give rise to a resulting trust in favor of the former on such land for the money so used. It is a general rule that a resulting trust must arise, if at all, from the state of facts existing at the time the legal title to the property is acquired, and so it cannot be created by a subsequent expenditure of money in improving the property." (39 Cyc. 116; *Hayden* v. *Dannenberg,* 42 Okl. 776, Ann. Cas. 1916D, 1191, 143 Pac. 859; *Coyle* v. *Davis,* 116 U. S. 108, 29 L. Ed. 583, 6 Sup. Ct. Rep. 314; *Chambers* v. *Emery,* 13 Utah, 374, 45 Pac. 192; *MacGinniss Realty Co.* v. *Hinderager,* 63 Mont. 172, 206 Pac. 436; *Eisenberg* v. *Goldsmith,* 42 Mont. 563, 573, 113 Pac. 1127; 21 C. J., sec. 707.)

[72 Mont. 84.]

Where a part of the purchase money is paid by one, and the whole title is taken by the other, a resulting trust *pro tanto* may, under some circumstances, be created, "but in the latter case, we believe it to be well settled that the part of the purchase money paid by him in whose favor the resulting trust is sought to be enforced must be shown to have been paid for some specific part or distinct interest in the estate; for 'some aliquot part,' as it is sometimes expressed; that is for a specific share, as a tenancy in common or joint tenancy, of one-half, one-quarter,   *   *   *   ; and that a general contribution of a sum of money toward the entire purchase is not sufficient." (*McGowan* v. *McGowan*, 14 Gray (Mass.), 119, 74 Am. Dec. 668; *Green* v. *Covillaud*, 10 Cal. 317, 70 Am. Dec. 725.)

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

Action by plaintiff Emma Feeley against defendant Mary Feeley to enforce a trust in real estate. Judgment for defendant. After the denial of her motion for a new trial plaintiff appealed from the judgment.

In the forepart of the year 1913, Elizabeth Feeley and her daughters, Mary, Emma and Margaret, were living together in the city of Butte. The mother was old and Margaret an invalid. The family resources were meager; the support of the family fell principally upon Mary, a seamstress, and Emma, a school-teacher. In May of that year there was in the Daly Bank & Trust Company to the credit of the mother $1,000. It was agreed by all, or practically so, as the trial court found, that in this sum the four persons named had rights as follows: The mother $200, Emma, $600, Mary, $150, Margaret, $50.

The mother without dissent from anyone used $225 of this money to purchase a monument for and otherwise improve the family plot in which her husband and the father of the children lay buried. She then drew from the fund $175 for a trip east, and obtained in her own name a certificate of deposit for

the remaining $600. Mrs. Feeley and Emma left for the east in June.

The Feeleys did not own their own home. The family had discussed the advisability of either purchasing a dwelling or buying a plot of ground and building a house thereon, but did not reach any decision upon the subject. Thus matters stood when the mother and Emma started on their eastern trip. During their absence there does not seem to have been any direct communication between Mary and Emma.

Now, during the period covered by the witnesses in their testimony John Provost and his wife, a sister of Mary and Emma Feeley, were living at 1723 C Street, which is in block 10 of the Mayflower Addition to the city of Butte. While the mother and Emma were absent Mary conceived the idea of purchasing lots 3, 4 and 5 in block 10, which lie directly across the alley from the Provost property and face on B Street, and of erecting a dwelling thereon. Following out this idea early in August she and Mr. Provost went to the office of the Hanson-McPherson Company in Butte, where she negotiated for the purchase of the lots above mentioned at an agreed price of $50 for the three, and paid $50 down. She said to the Hanson-McPherson people, ''When Emma comes home we will pay the remainder of this money.'' She told them, in effect, that she would take the deed in her name but it did not make any difference whether it was made in her name or Emma's, as she and Emma were to own the property. As a result of these negotiations the Butte Land & Investment Company, doubtless acting at the instance of the Hanson-McPherson Company, which seems to have been a mere middleman, executed to Mary a contract for a deed for the lots. A few days later Mary and Mr. Provost went to the office of the Western Lumber Company. There they told Mr. Dunks, the manager, of the lumber required for the building intended to be erected and discussed terms of payment. Mary said she did not have much money at hand as her sister was in the east, but she could pay $100 down and

upon the return of her sister, who was a school-teacher, she felt sure they could make a payment of $100 a month. She told Mr. Dunks the lumber was for herself and her sister Emma. Mr. Dunks, it seems, agreed to furnish the lumber on the terms proposed, and pursuant thereto it was furnished and became a part of the house which was erected on the lots.

Mrs. Feeley and Emma arrived in Butte from the east on September 1, 1913. To their surprise they found Mary and Margaret boarding with Mr. and Mrs. Provost while the family furniture was in a tent on the rear of the lots Mary had undertaken to purchase. At that time the foundation of the house was completed, while a considerable portion of the superstructure was erected. Joseph Feeley, a brother of the girls, was doing the carpenter work, donating his labor to assist in making a home for his mother and sisters.

In the afternoon of September 1, the family gathered at the home of Mr. and Mrs. Provost. There were present Mr. and Mrs. Provost, Mrs. Feeley, Mary, Emma, Margaret, and possibly Joseph. Mary related what she had done toward purchasing the lots and building the house. In answer to a question as to her reason for not advising Emma of the contemplated purchase and house building, Mary said she acted as she did intending it as a surprise for Emma. Continuing, she said the lots were costing $450 and the payment was to be made through the Butte Land & Investment Company; the lots were to be owned jointly by Emma and herself. Mary said to Emma: "I made a payment of $50 on the lots and I waited for your return to draw the $400, the balance that is due to complete the payments," referring to the money in the bank. And further: "I had no reason for having the contract or the deed drawn up in my name other than I was here at the time and it is understood that you and I will have to meet the bills, and that we will share equally in the property," asserting that if Emma was in any way dissatisfied with the deed being in her name she would willingly change

it to Emma's, and Emma said: "That is all right. Just leave it in your name."

There is no doubt whatever that as a direct result of this conversation the certificate of deposit was cashed and from the proceeds the sum of $400 was paid upon the lots. The court found as a fact that on September 4 the "$600 remaining in the bank was withdrawn, $400 was carried to the realtors and paid in full upon the lots, $100 on the lumber, and $100 held for household needs; deeds dated September 3 were received on September 4, 1913, conveying the legal title to Mary Feeley in her individual name, one of which deeds recited it was in fulfillment of a contract made with Mary of date the previous August 6."

In its conclusions of law the court also refers to the deeds as having been delivered on September 3. Whether the third or fourth be the correct date is not material if it be admitted that the $400 was paid either prior to or contemporaneously with the delivery of the deeds; and that such admission must be made cannot reasonably be doubted upon the record. Likewise, upon the record it cannot be disputed successfully that the $400 was Emma's money. Immediately after Mary received the deeds she gave them to Mrs. Provost for safe-keeping, saying they were paid for by Emma's money. The court found that thereafter, month by month, Emma's school warrant, amounting to $95, was given over by her and applied on the lumber bill for six or eight months, and later and on other occasions she gave to the mother or to Mary or to Mrs. Provost for payment on the cost of the building various items of cash "aggregating, with the $400 above referred to and claimed by Emma to be from her funds deposited with the mother, a total of $1,320." The court was unable to find that Mary had put into the property over $250. The labor of the brother was voluntary, his only recompense being that of food and lodging with the family. But the court observed that no doubt Mary turned into the family fund her wages "which were used for the common household expense and

payment of bills on the house until its completion." Indeed, there does not seem to be any doubt that Mary and Emma in sisterly fashion intended jointly to create and own a home for their aged mother, invalid sister and themselves.

The family moved into the house about December 1. It was not completed to Emma's satisfaction but Mary said she was not willing to put any more money into it; Emma might if she wanted to. However, the family seem to have gotten along without any considerable friction until 1917. In September of that year Emma said to Mary that the house was incomplete, not comfortable, and they should together defray the expense of finishing it and making it more comfortable. Mary then said Emma could put as much more into the house as she liked but she would never get a cent out of it. Sometime thereafter Emma purchased for herself another dwelling and removed thereto with her sister Margaret, Mary with her mother remaining in the house in controversy until the death of the mother in 1921. Shortly after that Emma represented to Mary that she was anxious that "everything be straightened up," and she demanded a deed for her interest in the property. Mary denied that Emma had any interest in the property whatsoever. Thereupon Emma began this suit against Mary for the purpose of having Mary declared her trustee to an undivided one-half interest in the property. She prayed that the property be sold and the proceeds applied to the payment of the costs and expenses of this action, and so forth, and that the residue from the proceeds of the sale be paid to herself and Mary in accordance with their respective interests. Hereafter we shall refer to Emma as the plaintiff and Mary as the defendant.

1. Upon the foregoing facts it must be held that a trust resulted in plaintiff's favor whereby she became entitled to an undivided one-half interest in the lots and dwelling thereon, which is all she claims. No doubt the court would have so concluded but for the fact that she was not a party to the contract of purchase dated August 6. This appears from the

court's conclusion of law No. 1, in which it held that the agreement had between the parties of September 1, 1913, relative to carrying out the contract of purchase made by defendant about August 6, 1913, could not create any trust in favor of plaintiff as against defendant when coupled with the fact that no part of plaintiff's money "went into the purchase price of the lots or into the erection of the building thereon until after September 1, 1913, and after the deal had already been made by Mary."

Section 6785, Revised Codes of 1921, provides: "When a transfer of real property is made to one person, and the consideration thereof is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made.

A resulting trust is created by operation of law, not by [1] contract. It may be proved by parol evidence. (*Wilson* v. *Wilson*, 64 Mont. 533, 210 Pac. 896; *Lynch* v. *Herrig*, 32 Mont. 267, 80 Pac. 240.)

The contract of August 6 was an executory contract relating [2] to the purchase of real estate. Of the purchase price $50 was paid with the understanding that the remaining $400 should be paid at a later date, and upon the payment of the full amount and not until then was title to pass from the sellers to the purchaser; title was to pass and it did pass upon the delivery of the deeds. Under this condition the language of Mr. Commissioner Clayberg in *Lynch* v. *Herrig*, *supra*, which had to do with an executory contract, becomes directly applicable to the instant case: "It is well established that, in order to raise a resulting trust, the payment of the money as the consideration for the purchase of the property must be made at the time or before the legal title to the property passes to the party to be charged in the trust capacity." (And see *Eisenberg* v. *Goldsmith*, 42 Mont. 563, 113 Pac. 1127; *MacGinniss Realty Co.* v. *Hinderager*, 63 Mont. 172, 206 Pac. 436.)

That the contract made by the defendant antedated the passing of title some four weeks does not affect the situation

[72 Mont. 84.]

in any degree. A different application of the rule in the instant case would not be consistent with equity and justice. It must be remembered that defendant made the contract for the lots intending that plaintiff's money should be used to complete the purchase; and it was used for that purpose by the defendant.

The court's judgment in favor of the defendant cannot be sustained.

2. The plaintiff having concluded her evidence, rested. The [3–5] defendant then moved the court for an order dismissing the action upon the ground that the complaint does not state facts sufficient to constitute a cause of action, or entitle the plaintiff to the relief sought, nor to any relief whatsoever; and that the evidence submitted does not sustain the allegations of the complaint "nor is it in itself, or any portion of it, sufficient to entitle the plaintiff to the relief sought or to any relief whatsoever." The court observed that the motion to dismiss was in effect a demurrer to the evidence. An extended colloquy occurred between court and counsel as to what would be the effect if it should overrule the motion to dismiss. Counsel for plaintiff contended that if defendant insisted upon her motion to dismiss the action she would thereby foreclose herself from presenting any evidence. Counsel for defendant disputed the contention and insisted upon having the court pass upon the motion. The court thereupon denied the motion to dismiss *pro forma,* reserving its decision as to the facts in the case, "awaiting further proceedings." Thereupon counsel for defendant called his client to the stand and offered evidence in support of her answer. Plaintiff objected to the introduction of any evidence by the defendant, and the court sustained the objection, relying upon the decisions of this court in *Stevens* v. *Trafton,* 36 Mont. 520, 93 Pac. 810, and *School District No. 2* v. *Richards,* 62 Mont. 141, 205 Pac. 206. The court misconstrued the holding in those cases.

This court has observed that technically there is no such thing as a motion for a nonsuit in an equity case. The same

might be said of a motion for a dismissal which amounts in effect to a motion for a nonsuit. Either really amounts to a motion for judgment in defendant's favor upon the merits.

In *Stevens* v. *Trafton, supra,* the court referred to what is now section 8805, Revised Codes of 1921, and quoted therefrom as follows: "The supreme court may affirm, reverse, or modify any judgment or order appealed from, and may direct the proper judgment or order to be entered, or direct a new trial or further proceedings to be had. \* \* \* In equity cases, and in matters and proceedings of an equitable nature, the supreme court shall review all questions of fact arising upon the evidence presented in the record, whether the same be presented by specifications of particulars in which the evidence is alleged to be insufficient or not, and determine the same, as well as questions of law, unless for good cause, a new trial or the taking of further evidence in the court below be ordered."

It observed that the evident purpose of the legislature in passing the law above quoted was to expedite the entry of final judgment, to put an end to litigation and to avoid the necessity of new trials involving expense and the contingencies incident to delay, and then said: "It is the duty of parties to an action in equity to introduce all of their testimony so that this court may carry out the intent of the legislature. If the defendant moves for judgment, at the conclusion of plaintiff's testimony, it will be construed hereafter as a declaration on his part that, if his motion be granted, he elects to stand upon the case presented by the plaintiff." So that, if in reviewing an equity case in which the trial court has rendered judgment for the defendant upon his motion at the close of plaintiff's case, this court should come to the conclusion that the trial court upon the evidence presented properly should have entered judgment for plaintiff, it will right the wrong and order judgment rendered in favor of plaintiff upon the record presented, unless in furtherance of justice it shall see fit to order a new trial.

When a defendant at the conclusion of plaintiff's evidence moves for judgment when he has evidence to combat that given by the plaintiff, he puts himself in the place of one who gambles with fate, for if the ruling be erroneously in his favor he may effectually shut the door of opportunity in his face. But if the court overrules his motion he is then as free to proceed as if he had not made it. Therefore after the trial court in this case had overruled defendant's motion to dismiss the case it was error to deny her the right to present her testimony. We say again that it is always desirable in equity cases to have all the pertinent facts before the court to the end that the rights and equities of the parties which are properly determinable in the action may be settled finally.

As the cause must go back for a new trial we call attention [6, 7] to the fact that the contract entered into by the defendant on August 6 should have been admitted in evidence. It was identified as that which was executed by the Butte Land & Investment Company to the defendant, and there appears thereon, under date of September 3, an acknowledgment by Mary Feeley that she had received the deeds which the contract called for. The signature of the defendant was proved sufficiently by her own testimony when she was called as a witness for the plaintiff.

3. But it is argued that the complaint does not state facts sufficient to constitute a cause of action. A demurrer to that effect as well as that the complaint is ambiguous, unintelligible and uncertain, was presented and argued early in the action. The court overruled the demurrer and we think properly. The complaint was not vulnerable to any of the objections urged against it.

It is true that there were allegations in the complaint which would be appropriate in an action drafted upon the theory that the plaintiff grounded her action upon an express rather than upon a resulting trust. A demurrer for duplicity might have been sustained (*Schwindt* v. *Lane Potter Lumber Co.*, 40 Mont. 537, 135 Am. St. Rep. 639, 107 Pac. 818), but there

was not any such demurrer. The allegations of the complaint are sufficient to state a cause of action upon the theory of a resulting trust. As we have often said, if a complaint discloses that plaintiff is entitled to any relief whatever, a general demurrer will be overruled. (*Baker* v. *Butte Water Co.*, 40 Mont. 583, 135 Am. St. Rep. 642, 107 Pac. 819; *Lambert* v. *Helena Adjustment Co.*, 69 Mont. 510, 222 Pac. 1057.) It was proper for the plaintiff to give evidence concerning the contract of purchase as that, together with the other facts and circumstances, tends to explain the conditions under which and the reasons why the plaintiff entrusted to the defendant her money to pay for the property in question. As this court observed in *Lynch* v. *Herrig, supra,* "while the agreements or contracts between parties do not of themselves form the basis of any relief as to the trust, they may be important for consideration in assisting to establish the fact of the ownership of the money, and how it was invested."

Upon the record we cannot agree with defendant's argument that the plaintiff has been guilty of laches.

The judgment is reversed and the cause is remanded to the district court of Silver Bow county with direction to grant the plaintiff a new trial.

*Reversed and remanded.*

ASSOCIATE JUSTICES RANKIN, HOLLOWAY and STARK concur.

MR. JUSTICE GALEN, being absent on account of illness, did not hear the argument and takes no part in the foregoing decision.