### KELLOGG CO. v. NATIONAL BISCUIT CO.

Civil No. 691.

District Court, D. New Jersey.

May 3, 1941.

Alfred I. Manson, Jr., of Newark, N. J. (Crichton Clarke, of New York City, M. Concannon, of Chicago, Ill., and Edwin L. Harding, of Battle Creek, Mich., of counsel), for plaintiff.

Wall, Haight, Carey & Hartpence, by Edward J. O'Mara, all of Jersey City, N. J. (John W. Davis, Edwin F. Blair, and George H. Coppers, all of New York City, of counsel), for defendant.

WALKER, District Judge.

The complaint alleges that in 1908 The Shredded Wheat Company, a corporation, conceived through its officers, a plan or scheme to create a monopoly in the common article of commerce known as shredded wheat; that it pursued many and various acts designed to drive competition from the field by unfair practices, by the assertion of the right to a monopoly and by quasi-legal proceedings, under which the said The Shredded Wheat Company asserted a claim to the sole right to manufacture and sell the product and to call it by its accepted name; that it used these proceedings as a vehicle for the distribution of "news" throughout the trade and to the customers of the plaintiff and others. The object of the dissemination of such "news" is claimed to have been to frighten prospective customers of the said company's competitors

from the purchase of said commodities from such competitors under the thinly veiled threat of legal proceedings by way of contributory infringement or otherwise.

Further, the complaint pleads such acts as designed to create a monopoly in violation of the Sherman Anti-Trust Act, 15 U.S.C.A. § 1 et seq., and it pleads the giving and granting of unlawful preference in violation of the Robinson-Patman Act, 15 U.S.C.A. §§ 13–13b, 21a, and also alleges the same acts as constituting unfair competition at common law, all of which acts were designed to establish such monopoly; that these acts conceived as a sustained plan by The Shredded Wheat Company were continued by the defendant, National Biscuit Company, when such defendant absorbed The Shredded Wheat Company in 1930; that the acts of the defendant after such absorption constituted continued ratification and consummation of said plan or scheme; that the defendant and its predecessor sought to drive from the market all competition in the production and sale of this article of public commerce when no legal right to such monopolistic privileges was in existence. It being contended that the assertion of such legal right was in bad faith and one of the methods by which a monopoly was created or attempted to be created.

The defendant moves,[1] to strike from the complaint paragraph 10,[2] from paragraph 14 the matter commencing in line 24, with the words "and when", and continuing through the remainder of that paragraph,[3]

---

[1] Pursuant to Rule 12(b) (6), Federal Rules of Civil Procedure, Title 28, U.S.C.A. following section 723c.

[2] 10. In furtherance of said restraint of competition and of said monopoly said The Shredded Wheat Company, in or about the years 1915 and 1916, forced Ross Food Company, a New York corporation, from the business of manufacturing shredded whole wheat biscuit and selling the same in interstate commerce throughout the several States, by falsely and libelously attacking said Ross Food Company as an imitator and infringer of said The Shredded Wheat Company's alleged monopoly rights, by falsely claiming through its local and traveling agents, salesmen and employees throughout the several States that all retailers and dealers in the products of Ross Food Company would be liable for damages as infringers if they dealt in the shredded wheat biscuit manufactured by said Ross Food Company; by intimidating trade journals and other periodicals to refuse to advertise the biscuit made by Ross Food Company; by using nefarious methods of espionage whereby the spies of said The Shredded Wheat Company stole into the factory of Ross Food Company and inspected its machinery and papers and attempted bribery of its employees and others to obtain various information for the purpose of circularizing purchasers from Ross Food Company, and intimidating and frightening such purchasers from dealing with Ross Food Company; by contracting and conspiring with Brown & Sharpe Manufacturing Co., of Providence, Rhode Island, the only makers of certain special machinery required for making shredded wheat biscuit, not to sell such machinery to Ross Food Company; by inducing other persons to break contracts and to refuse to contract with said Ross Food Company, and by the malicious institution in 1915 and in the United States District Court for the District of Connecticut, of an unfounded action against said Ross Food Company, et al. The destruction of said Ross Food Company thereby left said The Shredded Wheat Company with a monopoly of the interstate business in shredded wheat.

[3] 14. * * * and when, in or about the year 1934 plaintiff began to sell its shredded wheat product to its Canadian subsidiary, Kellogg Company of Canada, Limited, in distinctively sized and marked cartons, in foreign commerce, and the said Canadian subsidiary began to sell in Canada said shredded wheat products, which it had purchased from the plaintiff, said defendant, as another step in said scheme, caused its subsidiary, Canadian Shredded Wheat Company, Limited, maliciously and in bad faith, and without probable cause, to bring an unwarranted and vexatious action against plaintiff's said subsidiary, Kellogg Company of Canada, Limited, in the Supreme Court of Ontario, entitled, Canadian Shredded Wheat Co. v. Kellogg Company of Canada, Limited, and another, which action was brought for the sole purpose of furthering the defendant's attempt to monopolize and restrain interstate and foreign commerce in said shredded wheat product, and which action was decided in favor of said Kellogg Company of Canada, Limited (1936 Ont. Reps. 281), and the judgment of the Supreme Court of Ontario was unanimously affirmed by the Court of Appeals of Ontario, Same v. Same (1936 Ont. Reps. 613) and by the British Privy Council, Same v. Same (55 R.P.C. 125); and said defendant, in furtherance of said scheme, after the said adverse judgment of the British Privy Counsel caused its said Canadian

and paragraph 23.[4] It is urged that they fail to state or support a claim upon which relief can be granted and are immaterial and impertinent.[5]

The complaint alleges a cause of action based upon a conspiracy to restrain, monopolize and attempt to monopolize interstate and foreign commerce in shredded wheat. It is consequently necessary for the plaintiff to allege the existence of the conspiracy and the overt acts done pursuant thereto, showing the means by which the monopoly was effected or attempted.

In paragraph 9 of the complaint, defendant is charged with violating the Sherman Anti-Trust Act in conspiring from 1930 to the present time with unknown persons to restrain and monopolize interstate and foreign trade in shredded wheat and by actually monopolizing and restraining that trade. It also avers that The Shredded Wheat Company similarly conspired with persons unknown from 1915 to 1930.

Paragraph 10, alleges that, "in furtherance of said restraint of competition and of said monopoly", defendant's predecessor, The Shredded Wheat Company, in 1915 and 1916, by various unlawful methods, forced Ross Food Company, a New York Corporation from the business of manufacturing and selling shredded wheat in interstate commerce." The paragraph ends with the sentence: "The destruction of said Ross Food Company thereby left said The Shredded Wheat Company with a monopoly of the interstate business in shredded wheat."

Read together the aforesaid paragraphs allege an unlawful act and a conspiracy under Sections 1 and 2 of the Sherman Act to conspire and to commit acts both intended and designed to create a monopoly in trade in this country and with foreign countries.

The acts complained of in paragraph 10 are alleged to have been committed by The Shredded Wheat Company 14 years prior to its acquisition by the defendant. Even if committed, they did not, neither do they result in direct damage to the plaintiff. They are only relevant and pertinent if the theory of the plaintiff is correct. The theory is: National Biscuit Company is chargeable with the acts of The Shredded Wheat Company alleged in paragraphs 9, 10, 11 and 12 of the complaint, because, in 1930, it combined and conspired with The

subsidiary, maliciously, and in bad faith and without probable cause to file an application in the Canadian Trade-Marks Office, and a petition in the Exchequer Court of Canada, in an attempt to acquire exclusive rights in and to the words "Shredded Wheat", despite said prior proceedings, which said application and petition were not filed in good faith, but were filed for the sole purpose of furthering defendant's attempt to monopolize and restrain competition in interstate and foreign commerce in said shredded wheat product, and the filing of said application and petition necessitated the intervention of said Kellogg Company of Canada, Limited, in the proceedings filed in the Exchequer Court of Canada, in order to protect its rights in matters which were res adjudicata as between it and said Canadian subsidiary of defendant and which proceedings were decided in favor of said Kellogg Company of Canada, Limited, by the Exchequer Court of Canada and on appeal by the Supreme Court of Canada, such appeal case being entitled, Canadian Shredded Wheat Co. Limited v. Kellogg Company of Canada, Limited.

4 23. And by virtue of the terms and provisions of said Robinson-Patman Act, also termed the Price Discrimination Act [15 U.S.C.A. §§ 13–13b, 21a], the defendant is under a legal duty and obligation not to pay or grant, in the course of its interstate commerce in said shredded wheat, anything of value as a commission, brokerage or other compensation, or any allowance or discount in lieu thereof, except for services rendered in connection with the sale of such product, either to the other party to such transaction or to an agent, representative or other intermediary therein, where such intermediary is acting in fact for or in behalf, or is subject to the direct or indirect control, of any party to such transaction other than the defendant; and by virtue of other terms and provisions of said Price Discrimination Act the defendant is under a further legal duty and obligation not to pay anything of value to or for the benefit of a customer of the defendant, in the course of such interstate commerce, as compensation or in consideration for any services or facilities furnished by or through such customer in connection with the sale or offering for sale of said product, unless such payment or consideration is available on proportionately equal terms to all other customers competing in the distribution of such product.

5 Rule 12(f), Federal Rules of Civil Procedure, Title 28, U.S.C.A. following section 723c.

Shredded Wheat Company and others to monopolize the interstate shredded wheat trade, and in pursuance thereof and *in continuation* of the scheme of The Shredded Wheat Company of which it had knowledge, it took over the capital stock and business of The Shredded Wheat Company and then continued in the acts of The Shredded Wheat Company to monopolize that business, that, it thereby became a party to such conspiracy and thereafter to the present time has continued to further the purpose of such conspiracy and to pursue the said unlawful acts and attempts and to maintain such monopoly.

■ Let us not forget, the action is civil, the gravamen, damage to the plaintiff, not the existence of a conspiracy or the existence of a monopoly. In the absence of overt manifestations by which injury is inflicted upon the business or property of the one who sues, a conspiracy is not actionable.[6]

■ The plaintiff must establish a violation of the Anti-Trust Act and damages to it proximately resulting from the acts of the defendant, which constitute a violation of the act. In an effort to establish the violation, it pleads acts of The Shredded Wheat Company against Ross Food Company to show intent and results effecting a conspiracy, which it says the defendant joined and continued not by acts against Ross Food Company, it is true, but, by other acts, all part of a common scheme. To repeat, the acts against Ross Food Company are not offered as relevant on the question of damage to plaintiff, but they are offered because of alleged relevancy on the question of whether or not there was a conspiracy. If there was, then to the inquiry whether or not the defendant joined therein and continued same by promoting the object for which it originated. If it did, it is liable for everything done during the period of its existence regardless of the exact time at which it became a member or the extent of its participation,[7] provided the plaintiff herein suffered damage proximately resulting from what the defendant did in violation of the act.

■ The motion to strike paragraph 10 is denied.

The portion of paragraph 14, which is questioned, pleads the defendant caused its Canadian subsidiary to prosecute two suits at law in Canada and Great Britain against the Canadian subsidiary of the plaintiff. The first; for an injunction to restrain Kellogg Company of Canada, Limited, from making and selling shredded wheat and though defeated by the Canadian courts was carried through to the last defeat before the Judicial Committee of the House of Lords in England. The second; an application to the Canadian Trademark Office in an attempt to acquire exclusive right to the words "shredded wheat" as a trademark. The plaintiff contends that this application necessitated intervention to protect the public right to the use of these words; and that; thereafter, the defendant caused its subsidiary to carry said cause to the Supreme Court of Canada. It is alleged the acts connected therewith and the institution of said suits were but steps in the concerted plan and scheme of the defendant to establish its monopoly in this public article of commerce, that the plan was conceived by the defendant through its officers here and carried out here by the acts of the defendant's officers within the United States by causing its Canadian subsidiary to pursue the same policy conceived and carried out by the defendant in this country.

■ The acts complained of concern sales by Canadian corporations in Canada. They cannot be material except; as a further step in the alleged scheme and plot of the defendant to monopolize the market in the United States. The plaintiff argues; they are not specified as an item of damage but as one step in a connected whole. On this theory the motion addressed to part of paragraph 14 is denied.

Paragraph 23 was struck from the complaint at the time of the argument.[8]

"Each claim founded upon a separate transaction or occurrence and each defense other than denials shall be stated in a separate count or defense whenever a separation facilitates the clear presentation of the matters set forth."[9]

■ The complaint is complex and redrafting might facilitate the clear presentation of the matters set forth therein; how-

[6] In Glenn Coal Company v. Dickinson Fuel Co. et al., 4 Cir., 1934, 72 F.2d 885; Rice v. Standard Oil Company, C.C.D.N.J.1905, 134 F. 464.

[7] Dextone Co. v. Building Trades Council, 2 Cir., 1932, 60 F.2d 47.

[8] Page 66, line 12 of the transcript.

[9] Rule 10(b), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

ever, the plaintiff has crystalized its contents by explicating an intention to plead; one transaction or occurrence; that is, a continuing conspiracy and a continuing plot to create a monopoly in the common article of commerce known as shredded wheat conceived by The Shredded Wheat Company and entered into, adopted and carried on by the defendant. With this knowledge, the single conspiracy theory is made the law of the case, and the motion to direct the plaintiff to state separately is denied.

■■■ The plaintiff has marked the motion for a more definite statement or for a bill of particulars[10] to show consent to certain items and opposition to others. In ruling upon the items objected to, we remember, the purpose of pleading under the new rules, is to give notice of what an adverse party may expect to meet, rather than frame issues. A motion for a more definite statement or particulars is not intended to obtain fact details, but, to enable a party to prepare his responsive pleading. The disjunctive statement "or to prepare for trial" has been read out of the rule. To ascertain the facts the broad rules of discovery[11] supersede the practice of framing issues by the pleadings.[12] As Dean, now Judge Clark, has said: " * * * if you want further evidence, you want it for two reasons, and they are both quite similar. One is to get further information to prepare your case; the other is for evidence for the trial. You do not get that by pleading, but you can get it by a full and complete system of discovery."[13]

The plaintiff will serve on the defendant within 30 days after the service upon it of an Order therefor, with notice of entry, a more definite statement and a bill of particulars of the following items:

**V.** As to paragraph 10 of the complaint:

    A complete statement.

(A)
(B) except; by whom and to whom.
(C) except; names of such agents, etc., of The Shredded Wheat Company and to whom.
(D) all except; by whom and to whom.
(E) all except; the name of the alleged spy.
(F) all except; by whom and to whom.

**VII.** . As to paragraph 12 of the complaint:
(F)
    (d)

**IX.** As to paragraph 14 of the complaint:
 (B)
    (d)
(E)
(F)

**X.** As to paragraph 15 of the complaint:
(A)
(B)
    (d)

**XIII.** As to paragraph 19 of the complaint:
(G)
    (d)

**XIV.** As to paragraph 24 of the complaint:
(F)
    (b)

**XV.** As to paragraph 25 of the complaint:
(B)
    (c)
    (i)

Orders should be presented.

---

[10] Rule 12(e), Federal Rules of Civil Procedure, Title 28 U.S.C.A. following section 723c.

[11] Montgomery's Manual of Federal Jurisdiction and Procedure. A Bill of Particulars becomes a part of the pleading it supplements. Rule 12(e), Federal Rules of Civil Procedure, Title 28 U.S. C.A. following section 723c.

[12] Rules 26 to 37 inclusive, Federal Rules of Civil Procedure, Title 28 U.S. C.A. following section 723c.

[13] Proceedings, Institutes American Bar Association, Washington and New York, 1938, pp. 232, 242.