**FIREMEN'S INS. CO. OF NEWARK, N. J. et al. v. SHOW et al.**

**No. 1318.**

United States District Court,
D. Montana, Great Falls Division.
Jan. 29, 1953.

H. C. Hall, Edward C. Alexander and Howard C. Burton, Great Falls, Mont., for plaintiffs.

W. R. McDonald, Browning, Mont., Selden S. Frisbee and John P. Moore, Cut Bank, Mont., for defendants.

PRAY, Chief Judge.

The plaintiff insurance companies in the above entitled cause instituted this proceeding under the Declaratory Judgments Act, 28 U.S.C.A. § 2201, seeking injunctive relief and determination of ownership of that certain automobile in question and the validity of that certain automobile liability insurance policy thereon, with respect to plaintiffs' liability thereunder and obligations to the insured with relation to persons alleged to have been injured in a collision and accident which occurred on or about December 17, 1950, near Browning, Montana.

Defendants' separate motions to dismiss upon the grounds the complaint fails to state a claim upon which declaratory relief can be granted have heretofore been overruled; the question of injunctive relief is not ruled upon because it is not before the court at this stage of the proceedings.

The complaint sets forth that a certain liability insurance policy was issued to defendant Jerry Show on the condition that he was the sole owner of a certain Willys pickup truck and the condition that there was no conditional sale, mortgage, or other encumbrance upon said truck, and said policy of insurance was continued in force by transfer upon a 1950 Ford pickup truck upon the same conditions.

That in January, 1951, plaintiffs investigated an accident which occurred on or about December 17, 1950, when said Ford truck was being driven by defendant Jerry Show, at a point approximately 10 miles south of the town of Browning, in Glacier County, Montana; that as a result of said accident the defendants John T. Show and Joseph P. Weatherwax have commenced actions in State court against defendant Jerry Show, and demand has been made upon plaintiffs by defendant Jerry Show to defend the suits now pending in State court.

Plaintiffs contend that their investigation determined that Jerry Show was not the owner of the said 1950 Ford pickup truck but that one J. W. Show (father of Jerry Show) was the owner of said truck, and that it was later discovered said truck was encumbered with a conditional sale contract or mortgage; that the said policy of insurance is invalid and void as of the date of issuance on November 29th, 1950, of the endorsement transferring said policy from the 1947 Willys ¾ ton pickup truck to the 1950 Ford ½ ton pickup truck, and no liability has accrued or could accrue by

reason of the false and untrue statements and declarations made by the defendant Jerry Show and relied upon by plaintiffs with respect to the ownership of said 1950 Ford pickup truck, and with respect to the encumbrances thereon; that tender was made of the premium paid for said insurance in the sum of $97.72, and request made for surrender of said policy for cancellation, which tender and request was admitted by defendant Jerry Show on May 14, 1951, and refused by him.

Plaintiffs allege that they will be subject to great peril and hazard if they disclaim liability under said policy of insurance before a determination of their proper rights thereunder, and be subjected to large expense if required to defend the suits now pending in State court against defendant Jerry Show, and plaintiffs deny any and all liability under the terms of said policy of insurance, and deny they are obligated to defend the actions brought against defendant Jerry Show.

The policy of insurance involved herein, being Exhibit "A" attached to the complaint, shows that policy No. FM 787 116 was issued to cover a 1947 Willys ¾ ton pickup truck, with Jerry Show of Browning, Montana, being the named insured, for the policy period September 25, 1950 to September 25, 1951; that on October 26, 1950, an endorsement was issued, with Jerry Show as named insured, to cover said 1947 Willys truck with a new motor, and attached to said policy; that thereafter a change of automobile endorsement, effective November 29, 1950, with Jerry Show as named insured, transferred said policy from said 1947 Willys pickup truck to said 1950 Ford pickup truck, and was attached to said policy; that said policy and the endorsements thereto were countersigned by C. E. Frisbee, Agent.

Pre-trial hearing was had on April 26, 1952, and thereafter counsel agreed upon and submitted an order pursuant to the pre-trial proceedings, and the court on May 1st, 1952, accordingly entered its order, viz: that the transcript of the pre-trial proceedings be filed in the case; that all admissions and the exhibits agreed upon be received as evidence in the trial without further identification or foundation; that the sole issue remaining to be tried in said cause is whether the defendant Jerry Show was the owner of the 1950 Ford ½-ton pickup truck, motor number 98 RC 500 378.

The cause then came on regularly for hearing on June 2nd, 1952, before the court, without a jury. Plaintiffs' counsel offered the following exhibits, which were received in evidence without objection: Plaintiffs' Exhibit "A", the order on pretrial hearing, Plaintiffs' Exhibit "B", the transcript of the pre-trial proceedings, and Plaintiffs' Exhibits "C" to "H", inclusive, being the same documents as were designated Plaintiffs' Exhibits Nos. 1 to 6, inclusive, in the pre-trial proceedings, as follows:

(1) certified copy of chattel mortgage, dated December 5, 1950, in the name of J. W. Show, covering said 1950 Ford ½ ton pickup truck;

(2) certified copy of Application for a Certificate of Title for a Motor Vehicle, dated December 5, 1950, by J. W. Show, for said 1950 Ford ½ ton pickup truck;

(3) Certificate of Title of a Motor Vehicle, Title No. 719255, dated December 21, 1950, in the name of J. W. Show, for said 1950 Ford ½ ton pickup truck;

(4) certified copy of Release of Lien, by Universal C. I. T. Corporation, dated April 25, 1951, for said 1950 Ford ½ ton pickup truck;

(5) certified copy of motor vehicle license and tax receipt, 1950, paid by J. W. Show, for said 1950 Ford ½ ton pickup truck;

(6) Disbursement Draft No. 22201, dated May 8, 1951, designated "Refund of premium on Policy # FM 787 116—Jerry Show", payable from Firemen's Insurance Company to Jerry Show, with letter tendering premium and requesting surrender of policy for cancellation, and admission of tender of $97.72 premium and demand for surrender of policy No. FM 787 116.

Counsel rested plaintiffs' case on the proceedings and documentary evidence hereinbefore set forth, without the testimony of any witnesses, and it appears that

the documentary evidence presented constitutes a prima facie case showing that according to such records the title and ownership of said 1950 Ford ½ ton pickup truck is in the name of J. W. Show, except that Jerry Show is shown as the owner in the insurance policy involved herein, which is Exhibit "A" attached to the complaint; that plaintiffs' prima facie case is subject, however, to the proof of defendants' case.

Defendants introduced evidence by defendant Jerry Show, J. W. Show, father of Jerry Show, and by Edward Nash, bookkeeper for Perry Motors, and Harry Shook, salesman for Perry Motors, that on November 29th, 1950, the initial downpayment on the purchase price of $1,837.51 for the said 1950 Ford pickup truck was made in part by the trade-in allowance of $652.05 on the 1947 Willys ¾ ton pickup truck which was owned by Jerry Show, and which fact of ownership was supported by a certified copy of Certificate of Title in the name of Jerry Show, being Defendants' Exhibit "I"; that as a further part of the initial downpayment a check in the amount of $500.00 was made payable to Perry Motors by J. W. Show as Administrator of the estate of Anna Show, which represented funds belonging to Jerry Show in his mother's estate. Ordinarily under the laws of the State of Montana the husband, J. W. Show, who was appointed Administrator of the estate of his wife, Anna Show, would inherit one-third and the children would inherit two-thirds, which is corroborative of the evidence that Jerry Show had an interest in the estate of his mother, Anna Show.

Witness Edward Nash testified in behalf of defendants that he handled the details of the transaction, including contracts; that Jerry Show was the buyer of the truck but due to the fact he was only 19 years old it appeared the only alternative was to register the vehicle in J. W. Show's name so that Perry Motors could assign the contract or chattel mortgage to Universal C. I. T. Corporation as a contract or mortgage of a minor was not acceptable; that on December 5th or 6th, 1950, when Jerry Show took delivery of the pickup truck he paid the additional $27 required to make up the total downpayment; that Plaintiffs' Exhibit "L" is an invoice in the name of J. W. Show, Plaintiffs' Exhibit "M" is a ledger sheet from the ledger of Perry Motors Company showing the account of J. W. Show; the mortgage signed by J. W. Show was assigned by Perry Motors to Universal C. I. T. Corporation; that it was the policy of Perry Motors to have an adult sign for a minor to guarantee the account.

Witness Harry Shook testified substantially the same as witness Nash, that Jerry Show owned the 1947 Willys pickup truck, that he sold the 1950 Ford pickup truck to Jerry Show and because of the restrictions of Universal C. I. T. with respect to a mortgage being signed by a minor it was his and Nash's idea to put the truck in the name of J. W. Show although the Shows had requested the said Ford truck be put in the name of Jerry Show as the purchaser and owner.

It appears that the payments in the transaction in the amounts of $652.05, $500 and $27 make a total of $1,179.05, leaving a balance of $658.46 from the total purchase price of $1,837.51. There is no evidence that any further consideration was ever paid on the mortgage of $658.46 by any party to the transaction, so that all of the payments have been accounted for in this litigation.

■ Section 86-103, Revised Codes of Montana 1947, provides: "Transfer to one for money paid by another—trust presumed. When a transfer of real property is made to one person, and the consideration thereof is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made." Feeley v. Feeley, 72 Mont. 84, 231 P. 908; Stauffacher v. Great Falls Public Service Co., 99 Mont. 324, 43 P.2d 647.

The provisions of the above statute are controlling where the property in question is personal. Meagher v. Harrington, 78 Mont. 457, 469, 254 P. 432.

■ It would seem that the evidence shows there has been compliance with the rule in Montana with respect to the re-

quirement that to establish a resulting trust the consideration be paid at the time, or before the time that legal title passed to the alleged trustee, in that the funds and the Willys pickup truck trade-in used for the initial downpayment at the time the legal title passed all belonged to Jerry Show, there being no contradictory evidence. First State Bank v. Mussigbrod, 83 Mont. 68, 92, 271 P. 695; Feeley v. Feeley, 72 Mont. 84, 231 P. 908.

In the matter of the claims of plaintiffs that the false and untrue statements and declarations made by the defendant Jerry Show were relied upon by plaintiffs with respect to ownership and with respect to encumbrances on said Ford pickup truck the testimony shows that the witnesses J. W. Show and C. E. Frisbee corroborate each other in regard to the facts and circumstances existing and of which C. E. Frisbee, plaintiffs' agent, was fully advised. J. W. Show testified he requested of C. E. Frisbee that the policy of insurance be transferred from the Willys pickup truck to cover the new 1950 Ford pickup truck which was being purchased from Perry Motors by Jerry Show, and advised C. E. Frisbee the purchase contract and the other purchase papers were in the name of J. W. Show because a mortgage executed by a minor would not be acceptable; he told C. E. Frisbee that Jerry Show was the owner of the truck and the insurance policy was to cover the new truck. C. E. Frisbee testified that J. W. Show, father of defendant Jerry Show, requested that the policy of insurance be issued to cover the Willys truck with Jerry Show as named insured, and later requested transfer of said policy to cover the new Ford truck in the name of Jerry Show as he was the owner of the new Ford truck; that he was further advised the transaction was being handled in his name, J. W. Show, because Universal C. I. T. Credit Corporation required that any contract or mortgage be executed by an adult rather than a minor; that he as an agent for the plaintiffs had the power to write a policy of that type, and he understood J. W. Show was going to sign the chattel mortgage on the balance due on the contract; that he suggested to J. W. Show that he talk it over with his attorneys to find out whether he was being properly protected; that Defendants' Exhibit "J" is a check which he received and endorsed for payment in the amount of $85.12 for the premium on the policy issued by him.

Defendants' Exhibit "J", mentioned above, is a check dated October 21, 1950, bearing the notation "Insurance Jeep Jerry Show" in ink, drawn on The First National Bank, Browning, Montana, payable to C. E. Frisbee, in the amount of $85.12, signed "J. W. & Anna Show by J. W. Show Ad'm."; endorsed C. E. Frisbee, with payment perforation date 10/27/50, being payment of premium on insurance policy involved herein.

The authorities hold that an agent who has the power to execute a contract of insurance and who has been fully informed, as here, and who knew of his own knowledge that a policy of insurance would be void and of no effect at the time of its issuance unless the insured was the unconditional and sole owner of said truck described in said policy has bound the insurer as under such circumstances it is per se a waiver of the condition of any provision voiding a policy if insured's interest was other than unconditional and sole as owner. In view of the testimony of C. E. Frisbee, agent for plaintiffs, which is full corroboration of the testimony of J. W. Show, it appears that plaintiffs are estopped from contending that said policy is void or that there is any merit or credence to be given their claims of false and untrue statements and declarations being made by defendant Jerry Show, or by his father, J. W. Show, which were relied upon by plaintiffs with respect to ownership of the said Ford truck and with respect to any incumbrance thereon in connection with the issuance of the policy of insurance and endorsements herein involved. Curtis v. Zurich, General Accident & Liability Ins. Co., Ltd. of Zurich, Switzerland, 108 Mont. 275, 89 P.2d 1038; Rudolph v. Johnson, 127 Cal.App. 451, 16 P.2d 152, 154; Kahn v. Commercial Union Fire Ins. Co. of New York, 16 Cal.App.2d 42, 60 P.2d 177; Rice

Oil Co. v. Atlas Assur. Co., 9 Cir., Mont., 102 F.2d 561, 569.

It is the contention of defendants' that there is ambiguity between the policy and rider provisions regarding ownership and encumbrances; that Item 7 of the policy reads: "Ownership: Except with respect to bailment lease, conditional sale, mortgage or other encumbrance the named insured is the sole owner of the automobile, except as herein stated: No exceptions."; that by virtue of Item No. 7 bailments, conditional sale, mortgage or other encumbrance are excepted by the very wording thereof, which is in conflict with inquiry as to ownership and the rider provisons respecting full payment by insured, encumbrances and interests in the event of loss, if any, payable as the interests appear; that such ambiguity which has been created by the plaintiffs must be construed against them. 29 Am.Jur.Insurance §§ 166, 167.

Plaintiffs in their briefs cite Sections 53–101 to 53–144, Revised Codes of Montana 1947, for the purpose of attempting to prove ownership of said Ford pickup tiuck in J. W. Show, stating that the Supreme Court of California in Parke v. Francisus, 194 Cal. 284, 228 P. 435, and General Motors Acceptance Corp. v. Dallas, 198 Cal. 365, 245 P. 184, has held that the method prescribed by the Statute was the only permissible method for determining the ownership of a motor vehicle; and that Section 53–109(d), R.C.M.1947, which appears to be taken from Section 8 of the Motor Vehicle Act of California, is comparable, and in view of the decision in Bond Lumber Co. v. Timmons, 82 Mont. 497, 501, 267 P. 802, that under the present Montana statute, 53–109(d), the Montana Supreme Court would follow the California decisions.

Defendants in replying to the above contentions have set forth a similar case of father and son relationship, which holds that presumption of ownership of an automobile is rebuttable, and also cite the case of Henry v. General Forming, Ltd., Cal. Sup., 1948, 200 P.2d 785, wherein the Supreme Court of California held that the payment of the purchase price of an automobile by another than the one designated as transferee thereof on registration and title papers created a "resulting trust" and that the transferee held legal title as trustee, (being J. W. Show in this case as trustee), for the person furnishing the consideration. Defendants' argument and authorities cited seem to dispose of the effect of non-compliance with the Montana statutes cited, in connection with the certificate of title as related to the validity of an insurance policy.

It would seem that plaintiffs' contentions are erroneous in the conflicting claims (1) that Perry Motors was the owner of said Ford truck until delivery of said truck of December 5th, 1950, pursuant to Section 53–109(d), R.C.M.1947, (no valid transfer of title from Perry Motors to J. W. Show claimed); (2) or until issuance of the Certificate of Title by the Registrar of Motor Vehicles on December 20th, 1950, pursuant to Section 53–109(d), R.C.M.1947, (no valid transfer of title from Perry Motors to J. W. Show claimed); (3) so that Perry Motors is alleged by plaintiffs to have been the owner of the said truck at the time of the accident on December 17th, 1950, i. e., under the Statutes; and (4) the said insurance policy never became effective as to either Jerry Show or J. W. Show as under the express provisions of the Statute neither had nor would have any title to the truck; if such claims were meritorious, it would mean that any defect or conflict in compliance with the Statutes, or impossibility of compliance under Section 53–109 (d) when said policy was issued on November 29th, 1950, by the agent for insurer and the application for and issuance of a Certificate of Title by the Registrar of Motor Vehicles required several days, or 22 days as here required, ipso facto, the policy was void and never effective because the title had not been issued by the Registrar of Motor Vehicles until December 20th, 1950, regardless of the insurance contract executed on November 29th, 1950, would result in an option to the insurer to claim and allege voidness or invalidity, which raises a cloud on a policy of automobile liability insurance; such claims would appear to re-

quire rejection as being without merit or authority.

■ . Upon stipulation and agreement of counsel aforesaid a pre-trial order was entered, which provided in part: "3. That the sole issue remaining to be tried in said cause is whether the defendant Jerry Show was the owner of the 1950 Ford ½ ton pick-up truck, motor number 98 RC 500 378.", which is the truck described in the insurance policy involved herein. Yet, during the trial and in the briefs, counsel for both sides have included issues pertaining to alleged false and untrue statements and declarations made by defendant Jerry Show and relied upon by plaintiffs with respect to ownership of said 1950 Ford pickup truck and encumbrances thereon, therefore, such issues are disposed of herein.

It is the contention of counsel for defendants in his opening statement that J. W. Show is the legal title holder; that plaintiffs allege Jerry Show was not the owner of said Ford truck, and defendants can deny that; in fact, defendants say Jerry Show does own the truck and defendants are going ahead with proof to show that Jerry Show always did own the said truck.

It appears that defendants' denial of the allegations made by plaintiffs that Jerry Show was not the owner of the truck is definite enough to inform plaintiffs that the issue they must be prepared to meet is the issue of ownership of the said Ford truck as between Jerry Show to whom plaintiffs issued said policy of insurance as the owner of said truck and J. W. Show whom plaintiffs contend is the owner of said truck, while defendants contend J. W. Show is only the legal title holder of said truck, and the trustee for Jerry Show.

■ . Defendants' proof was received subject to plaintiffs' objections on the grounds that the answers do not allege affirmatively or otherwise a resulting trust or any other kind of a trust insofar as J. W. Show the legal owner of the truck is concerned; such objections are overruled for the reason that under the Federal Rules of Civil Procedure, 28 U.S.C.A. the issue of ownership is created by the complaint and answer, no additional pleadings are neces-

sary, and under the general denial the defendants may introduce any evidence which tends to controvert any fact material to plaintiffs' case. Bickart v. Union Barge Line Corporation, D.C., 6 F.R.D. 579: "Under the federal rules, the function of pleadings is to create the issues and if the issues are created by the complaint and answer, there is no need for additional pleadings." Monk v. United Life & Accident Ins. Co., of Concord, N.H., D.C., 2 F.R.D. 372; Bowles v. Brookside Distilling Products Corp., D.C., 4 F.R.D. 294.

Moore's Federal Practice, 1951, Rule 8, page 129 states:

"Negative and affirmative defenses as affected by Erie-Tompkins. In determining whether a defense is negative or affirmative Rule 8(c) is helpful, but it should be read in light of Erie Railroad Co. v. Tompkins [304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188], which was decided after the Rules were formulated by the Advisory Committee and promulgated by the Court. The elements of a claimant's prima facie case are ruled by substantive law, in non-federal matters by the law of the state where the federal district court is held; in federal matters by federal statute and federal common law. When the elements of plaintiff's prima facie case are thus determined, then anything which merely tends to disprove some or all of those elements is negative in character and an affirmative defense is not necessary. Only matters that are actually in avoidance of plaintiff's prima facie case are affirmative defenses."

Moore's Federal Practice, 1951, Rule 8, page 130 states:

"Construction and function of pleading. The mandate of Rule 8(f), that all pleadings shall be so construed as to do substantial justice, is the heart of the pleading rules, Secs. 8.03, 8.34, and when taken in conjunction with Rule 15 stating liberal terms for amendments of pleadings, allow and require decisions to be made on the merits and not on the niceties of pleading." "The function of pleading, then,

is the formulation of generalized issues. Detailed factual information can be obtained through use of the deposition and discovery rules; and by utilizing pre-trial procedure the real issues are formulated and the non-controversial ones eliminated from the trial."

Chealey v. Purdy, 54 Mont. 489, 171 P. 926, 927: "It logically follows that under his general denial the defendant may introduce any evidence which tends to controvert any fact material to plaintiff's case, and if he is successful in overcoming the prima facie case disclosed by plaintiff's evidence, as a whole, or in any particular, or in establishing an equipoise in the proof, he is entitled to a verdict. 1 Ency.Pl. & Pr. 817; De Sandro v. Missoula L. & W. Co., 48 Mont. 226, 136 P. 711; Stephens v. Conley, 48 Mont. 352, 138 P. 189, Ann.Cas. 1915D, 958."

Conway v. Fabian, 108 Mont. 287, 89 P. 2d 1022, 1023, certiorari denied, 60 S.Ct. 94, 308 U.S. 578, 84 L.Ed. 484: "In actions concerning rights in personal property, as well as real property, general allegation of ownership in pleading is sufficient to admit proof of any legal title, general or special."

█ It seems that the evidence produced by defendants with respect to waiver and estoppel, and received subject to the general and special objections of plaintiffs' counsel, is in the nature of defenses required to be pleaded under Rule 8(c) of the Rules of Civil Procedure, to give notice to the adverse party of the claim that will be made, or defense interposed, and to prevent surprise. Kellogg Co. v. National Biscuit Co., D.C., 1941, 38 F.Supp. 643; U. S. v. Johns-Manville, 1941, 67 F.Supp. 291; U. S. v. Demmon, D.C., 73 F.Supp. 336.

However, the court has considered the objections of plaintiffs' counsel to the proof with respect to waiver and estoppel produced by defendants, and said objections are hereby overruled, upon the grounds and for the reasons that defendants' proof goes to the merits of the action and transactions involved within the general subject matter at issue herein; and, in this connection, pursuant to the provisions of Rule 15(b) of the Rules of Civil Procedure, it appears, where the objecting party has not claimed the admission of such evidence would jeopardize plaintiffs in maintaining their action upon the merits, and made no request for a continuance to meet such evidence, that the court in the interest of justice that final disposition be made on the evidence rather than on the pleadings and in the exercise of its discretion should determine that the answers are considered duly amended to conform to the evidence, and, it is so ordered in view of the following authorities: Pearl Assurance Co., Ltd., v. First Liberty Nat. Bank, 5 Cir., 1944, 140 F.2d 200; Newman v. Zinn, 3 Cir., 1947, 164 F.2d 558; Fiske v. Wallace, 8 Cir., 1941, 117 F.2d 149, certiorari denied 313 U.S. 589, 61 S.Ct. 1112, 85 L.Ed. 1544; Popovitch v. Kasperlik, D.C., 76 F.Supp. 233; U. S. v. Demmon, D.C., 72 F.Supp. 336; Copeland Motor Co. v. General Motors Corp., 5 Cir., 199 F.2d 566.

The court has carefully considered the arguments and authorities set forth by counsel, and the evidence and documents submitted, and being duly advised and good cause appearing therefor, is of the opinion that the preponderance of the evidence is in favor of the defendants, and that they should prevail herein, and such is the court's order herein. Exceptions allowed counsel to the ruling of the court. The parties aforesaid to pay their own costs.